Thomas C. **PEALER**, Plaintiff,

v.

Secretary of Agriculture, Penrose **HALLOWELL**, et al., Defendants.

Civ. A. No. 84–1327.

United States District Court, M.D. Pennsylvania.

Dec. 4, 1985.

Alberto Roldan, Harrisburg, Pa., for plaintiff.

Michael B. Sutton, Allen C. Warshaw, Deputy Attys. Gen., Harrisburg, Pa., for defendants.

## MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction.*

The remaining defendants in this action, Penrose Hallowell, the former Pennsylvania Secretary of Agriculture, and other officials and employees of the Department of Agriculture, have filed a motion for summary judgment.[1] Also pending is plaintiff's motion to file a reply brief to defendants' reply brief in support of defendants' motion. Plaintiff, Thomas C. Pealer's, complaint under 42 U.S.C. § 1983 alleges violations of his first amendment rights to freedom of speech and of association as well as violations of his fourteenth amendment rights to due process and equal protection.[2] The complaint arises from Pealer's discharge from his employment as a supervisor of a Department maintenance crew. Pealer claims he was fired because he refused to make contributions to the Republican party and because he reported the improper use of state property.

### II. *Background.*

From the pleadings, depositions and affidavits of record, the following is the background of this litigation. The Department hired plaintiff on August 5, 1981, as a building maintenance foreman in charge of an eight man crew responsible for maintaining the Summerdale Laboratories and Region VI office of the Department of Agriculture. Pealer was an at-will employee. He was not protected by a union contract or civil service. (Hallowell affidavit, ¶ 13; Defendants' Statement of Undisputed Material Fact and plaintiff's Answer thereto, ¶ 13).

During the course of plaintiff's employment defendant Wingert asked him to make political contributions three times. First, on May 18, 1982, Wingert requested a $100 contribution for a dinner sponsored by the Governor Thornburgh committee. Pealer refused to make this donation. (Complaint, ¶ 85). Second, in the Summer of 1982, Wingert asked for a $25 contribution to another campaign. Pealer complied this time. (Complaint, ¶¶ 83–84). Finally, in October of 1982, Wingert sought another $40 contribution which Pealer refused to make. (Complaint, ¶¶ 89–90).

During the Summer of 1982 Pealer also complained to certain of the defendants that defendant Brown had moved into a stone house at the Summerdale Laboratories. Plaintiff believed that only someone associated with the Laboratories should have been permitted to live in the stone

---

1. By stipulation of the parties, filed March 5, 1985, Chester Heim, the Deputy Secretary of Agriculture, and Jay Uhler, personnel director of the Department, were dismissed from the case.

2. Pendent state claims were also alleged but plaintiff has elected not to pursue those.

house. At the same time he observed defendant Norris taking some state furniture, apparently abandoned at a dump, for his personal use. (Complaint, ¶ 72; Pealer Affidavit, ¶ 19). He reported his concern to some of the defendants.

Based upon the foregoing, Pealer argues that his discharge on May 26, 1984 was politically motivated since he refused to contribute to Republican party politics and was a whistle blower. He contends that at all times his work performance was good. (Pealer Affidavit, ¶ 13). He asserts that two of his work crew were not replaced because defendants wished to set him up for discharge by making it more difficult for him to accomplish his assignment.

Defendants assert that Pealer's discharge was not motivated by political considerations at all. (Hallowell affidavit, ¶ 5; Wingert affidavit, ¶ 6; Moyer affidavit, ¶ 4; Hubert affidavit, ¶ 5; Brigham affidavit, ¶ 4; Van Buskirk affidavit, ¶ 5; Clark affidavit, ¶ 5; Klinger affidavit, ¶ 5; Brown affidavit, ¶ 4; Norris affidavit, ¶ 4). Moreover, they point out that plaintiff has admitted that he lacks any evidence to tie his discharge to his failure to contribute. (Pealer Deposition, 48, 88–109, 112–13, 119, 215–25). Pealer was fired simply because he was not a good supervisor. (Hallowell affidavit, ¶ 4).

## III. *Discussion.*

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate only where the moving party establishes that no genuine issue exists as to any of the material facts in the case, and that he is entitled to judgment as a matter of law. *See, e.g., Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir.1981). Courts should resolve any doubts as to the existence of issues of material fact against the moving party, and view all inference in the light most favorable to the nonmoving party. [citation omitted].

*Fragale & Sons Beverage Co. v. Dill*, 760 F.2d 469, 472 (3d Cir.1985) (brackets added).

Bearing in mind the foregoing standard, we will dispose of defendants' motion as follows.

### A. *The Due Process Claim.*

Plaintiff claims that the defendants violated his right to due process by discharging him without a hearing. He claims that the "stigma" attached to him by branding him incompetent in connection with discharge from employment violated a liberty interest he possessed under the fourteenth amendment. In *Scarnati v. Washington*, 599 F.Supp. 1554 (M.D.Pa. 1985), we considered the same issue and noted as follows:

> The "liberty interest" is the interest an individual has in being free to move about, live, and practice his profession without the burden of an unjustified label of infamy. *Board of Regents v. Roth*, 408 U.S. [564] at 572, 92 S.Ct. [2701] at 2706, 33 L.Ed.2d [548] at 557 (1972). In the context of *Roth*-type cases, a charge which infringes one's liberty can be characterized as an accusation or label given the individual by his employer which belittles his worth and dignity as an individual and, as a consequence is likely to have severe repercussions *outside* of professional life. Liberty is not infringed by a label of incompetence, the repercussions of which primarily affect professional life, and which may well force the individual down one or more notches in the professional hierarchy. The distinction is not perfect; our utility affects our dignity and worth whether viewed from within or without. However, implicit in such a distinction is the notion that the constitutional need for procedural protection is not strong when the charge (e.g., incompetence) involves a matter which is peculiarly within the scope of employer-employee relations and when the likely results of even a false charge are reduced economic returns and diminished prestige, but not permanent exclusion from, or protracted interruption of, gainful employment within the trade or profession.

*Id.* at 1556 (quoting *Stretten v. Wadsworth Veterans Hospital,* 537 F.2d 361, 366 (9th Cir.1976)) (footnote omitted).

In *Stretten,* the court went on to note that employers "have a strong interest in conserving resources and dealing expeditiously with incompetent employees." 537 F.2d at 366.

■ These principles apply to the case at bar. Plaintiff was informed that he was discharged because his superiors had concluded that he was incompetent. But the Commonwealth:

> did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case.

*Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548, 558 (1972).

Accordingly, plaintiff's due process claim must fail because the state did not violate his federally protected liberty interests.

■ In any event, we also note that the reason for plaintiff's discharge was not revealed to the public. Plaintiff was informed by a letter from defendant Hallowell, dated June 19, 1984, that he was being fired as a result of "unsatisfactory job performance" but that information was not disseminated to the public. Plaintiff argues that "other people were told." To support that contention, however, he relies upon paragraphs 11 and 12 of his affidavit in which he only alleges that defendants Moyer and Van Buskirk informed defendant Hallowell of their opinions of Pealer's competence. Communication between the defendants alone is obviously not public disclosure and could not have damaged plaintiff's standing in the community. *See Scarnati, supra.*

**3.** Plaintiff also failed to plead the state claim and, despite the logic of doing so, failed to

■ In apparent further support of a due process claim plaintiff has also set forth two arguments which would properly only support state law claims for breach of an employment contract. First, citing *Bruffett v. Warner Communications, Inc.,* 692 F.2d 910 (3d Cir.1982), plaintiff contends that a memo, dated April 21, 1983, sent by defendant Van Buskirk to Pealer, created an implied term of fair dealing and good faith in Pealer's employment agreement. Plaintiff does not quote from the memo the language he believes supports this contention and a review of that document reveals no specific language dealing with fair dealing or good faith. It merely recites Van Buskirk's view of Pealer's responsibilities as building maintenance foreman. Plaintiff's position on the length of his employment is contradictory but there has been some admissions that his employment was at-will. (Defendants' statement of undisputed material fact, and plaintiff's answer thereto, ¶ 11; Pealer's deposition at p. 148). The discharge of an at-will employee cannot violate any implied term of fair dealing and good faith since in those circumstances it is understood that discharge can occur at anytime and for any or no reason.

Despite the above admissions, plaintiff next argues that the term of his contract was until he reached retirement age and that the Department's custom and practice was not to discharge good, efficient and dependable employees unless it was for just cause. Citing *Novosel v. Nationwide Insurance Co.,* 721 F.2d 894 (3d Cir.1983) and *Adams v. Budd Co.,* 583 F.Supp. 711 (E.D.Pa.1984), plaintiff claims that Pennsylvania law holds that an employer's custom or policy can create contractual just cause requirements or procedures by which employers must abide.

■ Putting aside for the moment that plaintiff has failed to articulate how this alleged state law claim supports his federal constitutional claims,[3] plaintiff has not set

explore it at Hallowell's deposition.

forth facts which would support the state law claim. In an affidavit submitted in opposition to the defendants' motion plaintiff concludes in paragraph 10 as follows:

> The custom and practice within the Department of Agriculture was not to dismiss good, efficient, and dependable employees unless it was for just cause. Good and dependable employees are allowed to keep their position until they reach retirement age.

These statements contradict testimony Pealer gave at his deposition. When he was deposed in these areas, Pealer stated that no one in the Department ever told him that he could keep his job as long as his performance was satisfactory. He did testify that he "sort of felt" that that would be the case, (Pealer deposition at 237), and that it was "more or less assumed when you get a job," (Pealer deposition at 238), that discharge was contingent upon unsatisfactory work. But this evidences only an expectancy of continued employment, not a right to it. Thus, there was no mutually explicit understanding that would have taken him out of the general rule that employment at will can end at any time and *Novosel* is inapplicable here. *See Wolk v. Saks Fifth Avenue Inc.,* 728 F.2d 221 (3d Cir.1984).

Pealer's affidavit does not create any issues of material fact. It contains only conclusional allegations, and a party resisting a motion for summary judgment cannot expect to rely merely upon bare assertions, conclusory allegations, or suspicions. *Ness v. Marshall,* 660 F.2d 517 (3d Cir.1981). *See also Barwick v. Celotex Corp.,* 736 F.2d 946 (4th Cir.1984).

We conclude that Pealer has failed to show a violation of his right to due process.

## B. *The First Amendment Claims.*

Plaintiff claims his first amendment right to freedom of association was violated because he was discharged for refusing to contribute to the Republican party. He also asserts that defendants punished him for exercising his first amendment right to freedom of speech when he complained about the personal use of government property, including Brown's use of the stone house.

■ *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) sets forth the burden that plaintiff must satisfy to assert these claims successfully. Plaintiff must show: (1) that his conduct was constitutionally protected; and (2) that it was a substantial or motivating factor behind his discharge. Plaintiff's conduct may have been constitutionally protected but he has failed to show it had anything to do with his discharge.

Plaintiff relies heavily upon his own affidavit to carry his burden here. His reliance is misplaced because once again the affidavit sets forth only conclusional allegations concerning the reason for plaintiff's discharge. Paragraph 14 alleges that "I was terminated from my job as a Building Maintenance Supervisor because I refused to contribute to political fundraisers, and to the political campaigns or aims which all the defendants were involved in." Paragraph 8 asserts that the "reason that defendants did not help me obtain replacement workers and to manage the taking of leave by the maintenance crew was to interfere with my job performance." Paragraph 18 asserts that defendants "through a common agreement or understanding, refused to hire replacement workers because I refused to contribute to their political campaigns or aims." Paragraph 24 claims that "One of Dave Brown's political aims was to obtain a good place to live and pay a rate that would be substantially lower than if he would be leasing in the open market." Finally, paragraph 25 asserts "My refusal to cooperate with Dave Brown's aim was what motivated him to make unsatisfactory remarks about my job performance."

■ Nowhere are these conclusions supported by facts. When questioned about these claims at his deposition, Pealer admitted that he had no information to back up these charges and that, essentially, he was relying upon the allegations of his complaint. (Pealer deposition, 88–109, 112–20, 215–25).

Plaintiff submits his last employment evaluation before his discharge as evidence that he was fired for pretextual reasons.[4] In that report of July 1983, defendant Clark, then plaintiff's immediate supervisor, rated plaintiff "very good" in dependability and "good" in all the other categories of evaluation.

This evidence must be evaluated in the context of plaintiff's claim. Plaintiff did not sue, nor could he have, for wrongful discharge in violation of an employment agreement. He was an at-will employee and hence could have been discharged at any time even if his work was perfectly satisfactory. Plaintiff's claims are based upon violations of his constitutional rights and to succeed in those claims, as we noted previously, plaintiff must show that his discharge resulted in substantial part because of his exercise of those rights. Plaintiff has failed to do that. This isolated evaluation, made approximately one year before plaintiff's discharge, and considered in light of the many reports made by defendants over 1982–1984 concerning the work related problems of plaintiff and his maintenance crew, cannot carry plaintiff's burden in opposing defendants' motion for summary judgment.

Plaintiff argues that if we were to grant defendants' motion, we would be deciding issues of credibility which should be left to the factfinder. We disagree. In our view, plaintiff has simply not made out a case of retaliatory discharge for the exercise of federal constitutional rights. He has shown that he was solicited for political contributions three times in 1982, but his termination in June of 1984 hardly comports with plaintiff's charge that defendants, as a result of his failure to cooperate

fully in that fundraising, had an "over anxious desire" (plaintiff's brief in opposition to defendants' motion for summary judgment at 4), to terminate him. The same conclusion applies to plaintiff's claim concerning his 1982 "whistle blowing." This "whistle blowing" was *de minimus*, involving plaintiff's complaint that defendant Brown should not have rented the stone house at the Summerdale Laboratories and that defendant Norris should not have taken a desk from the stone house for his own use.

Plaintiff has failed to set forth any facts to support his claim and we will issue an appropriate order dismissing his claims.[5]

---

**4.** Plaintiff refers us to attachment A–3 to defendant Van Buskirk's answers to interrogatories. That exhibit, however, was not a performance evaluation report of Pealer but the memo by defendant Van Buskirk discussed above. Based upon defendant Clark's deposition, (N.T. 6), we believe that plaintiff is referring to an evaluation performed by Clark, filed with the Department of Agriculture on July 21, 1983, and

which we located among the voluminous documents plaintiff filed in support of his motion to reopen his lawsuit.

**5.** This includes the equal protection claim since plaintiff did not address this issue in his brief and has failed to articulate how this right was violated.