Carol BALLIET, John J. Balliet, Plaintiffs,

v.

Lucille B. WHITMIRE, George Gensemer, Kent Shelhamer, Joan M. Mosier, Eugene Hartman, Gregory Haas, Harold Crozier, County of Columbia, Linda Page, Children and Youth Services, Defendants.

Civ. A. No. 85–1091.

United States District Court, M.D. Pennsylvania.

Jan. 8, 1986.

Michael R. Lynn, Bloomsburg, Pa., for plaintiffs.

Joel M. Ressler, Deputy Atty. Gen., Harrisburg, Pa., Joseph Goldberg, Margolis, Edelstein, Scherlis, Sarowitz, & Kraemer, Philadelphia, Pa., for Whitmire, Gensemer, Shelhamer, Mosier, Hartman, Haas, Crozier, Cty. of Columbia, Page, Children & Youth.

Cody H. Brooks, Henkelman, Kreder, O'Connoll & Brooks, Scranton, Pa., Alvin J. Luschas, Solicitor for Columbia County, Bloomsburg, Pa., for defendant County of Columbia.

J. Brian Johnson, Allentown, Pa., for Linda Page.

## MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction.*

Defendants, Eugene Hartman and Harold Crozier, employees of the Commonwealth of Pennsylvania, have filed a motion to dismiss plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b). Defendants, Columbia County, its Commissioners, Lucille B. Whitmire, George Gensemer and Kent Shelhamer, the Children and Youth Services Agency of Columbia County (CYS), its director, Joan M. Mosier, and Linda Page, an agency employee, and Gregory Haas, a former employee, have also moved to dismiss plaintiffs' complaint.[1] Plaintiffs are Carol Balliet and her husband, John J. Balliet. Their complaint, brought pursuant to 42 U.S.C. § 1983, alleges that certain actions taken by defendants in connection with the latters' investigation of a day care center at plaintiffs' home violated plaintiffs' due process and fourth amendment rights, and other unspecified "civil" and "constitutional" rights. As will be made clear in our discussion this matter cannot proceed on this woefully inadequate document.

### II. *Background.*

Accepting as we must in the context of these motions the allegations of the complaint, the background of this litigation is as follows. For approximately one year plaintiffs participated in a CYS program which placed foster children under the

---

1. Plaintiffs' original complaint was filed on July 29, 1985. They filed an amended complaint on October 25, 1985 but in the meantime the defendants had filed motions to dismiss the original complaint. The amended complaint is identical to the original one. The county defendants filed a second motion to dismiss and memorandum in support thereof raising the same objections they did to the original complaint. The Commonwealth defendants did not file a second motion. Based upon the identity of pleadings and issues, we will treat the latter defendants' motion in connection with the amended complaint. Hereafter, references to the complaint will be to the amended complaint.

plaintiffs' care. Carol Balliet also operated an informal baby-sitting service in her home. (Complaint, ¶ 12).[2] Apparently, at some point in time the Balliets indicated that they no longer wished to accept foster children from CYS.[3] Plaintiffs allege that, in retaliation for this decision, defendant Haas gave "false and fraudulent information" to the Pennsylvania Department of Public Welfare (DPW). The nature of the information is unspecified but it can be inferred from subsequent allegations that Haas reported that the Balliets were sexually abusing the children placed in their care.[4] (¶ 16). Haas's charges led to a "prolonged and illegal investigation" by defendant Hartman which was subsequently illegally reopened [5] and extended beyond time limitations set by state law. Plaintiffs claim a violation of due process of law in connection with this conduct.

According to the complaint the DPW investigation resulted in other alleged irregularities. Hartman instigated another DPW investigation centering on the Balliets' sexual abuse of two of their own children. (¶¶ 21, 24). Further, he refused to permit plaintiffs' attorney to be present during the investigative interviews conducted with the children. (¶ 25). During one interview conducted in the presence of plaintiffs' counsel, he used "profane and vulgar language." (¶ 32). He also threatened to remove one of the plaintiffs' minor children from the home. (¶ 28). Finally, Hartman's conclusion that plaintiffs had engaged in sexual abuse of children is alleged to be violative of due process (¶ 20). Significantly, however, no criminal charges were ever

brought against the Balliets because the Columbia County district attorney, after referral of the charges to him, decided that they were baseless. (¶ 43).

Without placing responsibility explicitly upon any particular defendant, plaintiffs also complain that psychological evaluations they and the children underwent during the investigations were never considered in any determination of the validity of the charges. In some instances the evaluations were never made or, if made, never sent to DPW for consideration in violation of the procedure established for the investigation. (¶¶ 22, 23).

In apparent connection with the investigation or investigations, defendant Crozier, also employed by DPW, conducted "broad unannounced illegal inspections and searches that went well beyond the scope of propriety" at plaintiffs' residence, (¶ 41), in violation of their due process rights. Similarly, defendant Haas, in addition to supplying the initial allegations against the Balliets, also engaged in unannounced and improper inspections of the Balliets' home. (¶ 37). He would harass Carol Balliet and insult the children in her care. (Id.).

During the investigation of the Balliets, they requested, through their attorney, that the Commissioners invoke state law and obtain information from DPW concerning the competence of Haas but they refused to do so. (¶¶ 34, 35). Commissioner Whitmire specifically declined to become involved at the beginning of the investigation. (¶ 33). The Commissioners also "im-

---

**2.** We assume that the Balliets' participation in the program began approximately in April of 1984 because the action commenced by the Pennsylvania Department of Public Welfare, seeking to enjoin the Balliets from using their home as a day care center, was filed on April 15, 1985. (Complaint, ¶ 11).

**3.** Setting forth the precise sequence of events has been hampered by plaintiffs' failure to allege when events happened except for the filing of the action referred to in footnote 2.

**4.** The entire complaint is prolix, suffering from lengthy, complicated, and unnecessary sentence structure in violation of Fed.R.Civ.P. 8(e) requiring that each "averment of a pleading ... be

simple, concise, and direct." Allegations against different defendants are also commonly set forth in the same sentence, making it difficult to discern the claim or claims against each defendant. For the reasons discussed later in this memorandum plaintiffs will be required to amend their complaint. When they do so, they will also be required to divide the complaint into separate counts, setting forth "a short and plain statement of the claim" against each defendant. Fed.R.Civ.P. 8(a)(2).

**5.** The investigation had apparently been closed at some point.

pliedly refused" plaintiffs' minor child legal representation at the interview by initiating proceedings in court to block such representation. (¶ 30). The Balliets also claim that a policy of CYS permitted the illegal searches, and that the Commissioners "by extension" are responsible for the policy along with CYS. Finally, plaintiffs assert that the Commissioners supervised CYS's improper training of Haas who was not qualified for the assignment given him and that the Commissioners had a policy of using inappropriate personnel hiring criteria. (¶ 44).

The claims against CYS echo those made against the Commissioners. Plaintiffs claim CYS had a policy against permitting counsel at the interviews on behalf of themselves, (¶ 26), or their minor child. (¶ 30). CYS had implicitly approved the searches of the Balliets' home and the searches constituted a policy of the agency for which it and its supervisor, defendant Mosier, are responsible. (¶ 39). Finally, CYS had improperly trained Haas and had used inappropriate hiring criteria. (¶ 44).

It is alleged that defendant Mosier falsely told the Balliets that they did not need a license for their baby-sitting service and they relied upon this to their detriment when the state investigated them, in part, for not having a license. (¶ 17). Mosier was also involved in setting CYS's policy on the searches of the Balliets' home, (¶ 39), as well as its hiring and training policy.

The only allegation against Linda Page, an employee of CYS, is that she withheld information from the plaintiffs concerning a certain foster child that was placed in their care. The child had been sexually abused before being placed in the Balliets' home but they had never been informed of this. Subsequently, DPW identified the child as abused by the Balliets even though Page and CYS knew that the child was previously a victim of sexual abuse. (¶ 18).

Columbia County is named in the complaint as being represented by Mosier when she deliberately misled the plaintiffs concerning the need for a license, (¶ 17), and is

charged with responsibility for improper hiring and training policies. (¶ 24).

The complaint does not allege a general conspiracy by all the defendants acting in concert to deprive plaintiffs of their constitutional rights. Rather, the individual defendants are alleged to have acted with the implied authorization of their respective agencies and within their own sphere of authority. Hence, separate causes of action are alleged against different defendants.

### III. *Discussion.*

#### A. *Standard of Review.*

In ruling upon the motions to dismiss in this civil rights action we will rely upon the standard of review set forth in *Robb v. City of Philadelphia*, 733 F.2d 286 (3d Cir.1984) as follows:

> [W]e must accept all of the well-pleaded allegations of the complaint as true and construe the complaint liberally in the light most favorable to plaintiff, *Gomez v. Toledo*, 446 U.S. 635, 636 n. 3, 100 S.Ct. 1920, 1921 n. 3, 64 L.Ed.2d 572 (1980); *Jennings v. Shuman*, 567 F.2d 1213, 1216 (3d Cir.1977). We should not [dismiss] at the pleadings stage, especially ... a civil rights action, unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Scher v. Board of Education*, 424 F.2d 741, 744 (3d Cir.1970).
>
> To establish a valid claim under § 1983, a claimant must show: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981).

*Id.* at 290–91 (brackets added).

We will also bear in mind that "it is settled in this circuit that a civil rights complaint

under § 1983 must set forth with factual specificity the conduct of defendants alleged to have harmed the plaintiff." *Darr v. Wolfe,* 767 F.2d 79, 80 (3d Cir.1985); *Serge v. City of Scranton,* 610 F.Supp. 1086 (M.D.Pa.1985). We turn now to an examination of the complaint. In doing so we note that the claims can be broken down as follows.

### B. *Various Due Process Claims.*

Haas is alleged to have violated plaintiffs' due process rights by communicating false and fraudulent information to DPW, resulting in the investigation of the Balliets for child abuse. Other defendants are charged with liability for his conduct by way of "implied authorization." Defendants contend, no doubt as a result of the loose structure of the complaint, that plaintiffs have not identified a liberty or property interest violated by Haas's alleged conduct. We believe, however, as plaintiffs urge upon us, that the complaint can fairly be read to claim that, as a result of the adverse publicity generated by the charges, Carol Balliet can no longer provide a babysitting service in her home. Her chosen occupation has now been foreclosed to her because of the stigmatizing effect of state action.

■ Certainly, the right "to engage in any of the common occupations of life" is a liberty interest protected by the fourteenth amendment. *Board of Regents v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548, 558 (1972) (quoting *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042, 1045 (1923)). Additionally, Haas's statements that the Balliets were engaging in the sexual abuse of children was a "stigmatizing" charge of immorality within the meaning of *Roth, supra.* But Haas's conduct is not actionable as a due process violation for two reasons. First, Haas did not accompany his statements with his closure of plaintiffs' babysitting service. Second, the complaint does not allege that he disseminated his charges to the public.

■ *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) makes clear that some change in legal status must accompany the defamation before the right to due process is implicated. In *Paul,* plaintiff filed a section 1983 action against two police chiefs who published his mug shot and name in a flyer identifying active shoplifters to merchants in their respective jurisdictions. At the time of the publication of the flyer plaintiff's guilt or innocence on the shoplifting charges had not yet been determined but the charges were subsequently dropped. Plaintiff's employment as a newspaper photographer was unaffected by the flyer although his employer found out about it and questioned him concerning the incident. Plaintiff alleged in his complaint that his future employment prospects were adversely affected by dissemination of the flyer. Nevertheless, the Supreme Court upheld the district court's dismissal of the complaint. Noting that if a private individual had made the same allegations, plaintiff would have had only a state claim for defamation, the Court held that no liberty or property interest protected by the due process clause was implicated by the defendants' conduct. Reviewing previous cases in which due process claims had been asserted in a variety of contexts involving rights said to have been affected by state action, the Court stated that:

> In each of these cases, as a result of the state action complained of, *a right or status* previously recognized by state law *was distinctly altered or extinguished.* It was this alteration, *officially removing the interest from the recognition and protection previously afforded by the State,* which we found sufficient to invoke the procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment.... [Davis's] interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law.... And any harm or injury to that interest, even where as here inflicted by an officer of the State, does not result in a deprivation of any "liberty" or "property" recognized by

state or federal law, nor has it worked any change of respondent's status as theretofore recognized under the State's law.

*Id.* at 711–12, 96 S.Ct. 1165–66, 47 L.Ed.2d at 420 (brackets added).

■ These principles apply here. Haas merely communicated charges to DPW. While just as in *Paul*, the charges may have been defamatory, they were not accompanied by a change in plaintiffs' status under state law. Haas did nothing, nor could he have, to remove officially from state recognition and protection Carol Balliet's operation of a baby-sitting service. Defamation alone, even if accompanied by indirect adverse effects upon future occupation or employment, is not a constitutional tort. *See Paul, supra; Mosrie v. Barry,* 718 F.2d 1151 (D.C.Cir.1983). *But see Logical MiniComputers of Erie, Inc. v. Fox,* 602 F.Supp. 819 (W.D.Pa.1985); *Petrone v. City of Reading,* 541 F.Supp. 735 (E.D.Pa. 1982). Plaintiffs have not presented us with any other claimed violations of a liberty or property interest under state law which have arguable merit.[6]

■ The charges must also be disseminated to the public. If not, the due process claim is fatally defective. *Scarnati v. Washington,* 599 F.Supp. 1554 (M.D.Pa. 1985). "Unpublicized accusations do not infringe constitutional liberty interest, because, by definition, they cannot harm 'good name, reputation, honor, or integrity.'" *Bollow v. Federal Reserve Bank,* 650 F.2d 1093, 1101 (9th Cir.1981), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982) (quoting *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074,

2079, 48 L.Ed.2d 684 (1975)). *See also Pealer v. Secretary of Agriculture,* 622 F.Supp. 1039 (M.D.Pa.1985). As stated by the court in *Whelehan v. County of Monroe,* 558 F.Supp. 1093 (W.D.N.Y.1983), in dealing with factual circumstances similar to the case at bar:

[W]hatever else may be necessary to state a section 1983 claim for defamation by a state official, mere defamatory publication of suspicion of child neglect or abuse to agencies authorized by law to receive such reports is not sufficient publication for the purpose of stating such a claim.

*Id.* at 1109 (brackets added).

Based upon the foregoing, we conclude that Haas's conduct in communicating his allegedly defamatory comments of child sexual abuse to DPW cannot form the basis of a civil rights claim against him or any other defendant. Normally, we would be inclined to grant leave to amend on the public dissemination element of the cause of action but, because plaintiffs could never allege that Haas officially caused an alteration in their status under state law, we will dismiss this claim outright. Leave to amend should be liberally granted. When it is clear, however, that the amended complaint would not survive a motion to dismiss, we are not required to allow such a futile attempt. *See Massarsky v. General Motors Corp.,* 706 F.2d 111 (3d Cir.), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983).

■ Plaintiffs also claim that due process was violated when defendant Hartman, allegedly in violation of state law, illegally prolonged an investigation and re-

---

**6.** Our conclusion is not contrary to *McKnight v. Southeastern Pennsylvania Transportation Authority,* 583 F.2d 1229 (3d Cir.1978). In that case, the Third Circuit did conclude that future employment or occupation was a liberty interest protected by due process. But as stated in *McKnight* the court "was called upon to analyse the contours of the right to due process of one who has been discharged from public employment." *Id.* at 1233. The discharge was accompanied by stigmatizing charges of intoxication against the plaintiff. The case was thus clearly controlled by *Board of Regents v. Roth,* 408 U.S.

564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), both relied upon by the court in *McKnight,* and whose validity was upheld as "re rationaliz[ed]," see *Mosrie, supra,* 718 F.2d 1151, 1162 (Ginsburg, J., concurring), by the Court in *Paul, supra. McKnight* actually turned on whether the district court had correctly dismissed the complaint because it had concluded that as a matter of law the charges were not stigmatizing. Thus, the court in *McKnight* was not faced with the issue directly presented in the instant case.

opened it after it was closed. Aside from state law violations, no other illegal or unconstitutional activity is articulated. An essential element of a federal civil rights claim is the deprivation of a right conferred by the federal constitution or federal law. A state law violation is not sufficient. *Braderman v. Pennsylvania Housing Finance Agency*, 598 F.Supp. 834, 840 n. 3 (M.D.Pa.1984). Plaintiffs assert this "illegal" investigation violated their right to engage in a chosen occupation. Based upon the foregoing discussion concerning Haas's conduct, we reject a civil rights claim based upon the pleaded allegations.

■ Plaintiffs allege that Hartman was responsible for the anonymous tip resulting in a DPW investigation of their sexual abuse of two of their own children, and that DPW initiated this investigation in a malicious manner. These allegations, standing alone, fail to state a due process claim. The motive with which a state actor conducts himself is irrelevant to a civil rights claim. *Robb v. City of Philadelphia*, 733 F.2d 286 (3d Cir.1984); *Shabazz v. Odum*, 591 F.Supp. 1513 (M.D.Pa.1984). "[C]onduct by an individual acting under color of law which is designed to harass and embarrass does not constitute a denial of a cognizable 'liberty' or 'property' interest in a claim brought under section 1983." *Western Reserve Oil & Gas Co. v. New*, 765 F.2d 1428, 1433 (9th Cir.1985) (brackets added). Additionally, plaintiffs have not even alleged that Hartman made the anonymous tip knowing it to be untrue. Even if they could make such an allegation, our discussion above concerning a similar claim against Haas forecloses any claim against Hartman based on these allegations. Thus, no opportunity shall be given to amend this claim.

Plaintiffs also assert that Hartman's conclusion that the sexual abuse charges were well founded violated their due process rights. No allegation is made that Hartman believed these charges to be false or that he knowingly relied upon false information in making the charges. No allegation is made that he disseminated these charges to the public or, as noted by our discussion above, officially altered plaintiffs' legal status under state law in conjunction with the charges.[7] This claim too must be denied without leave to amend.

■ Plaintiffs also claim a due process violation resulting from defendant Page's decision not to inform them that a child placed in their care had a history of prior sexual abuse. This child was identified in the DPW Commonwealth Court complaint as one of the children sexually abused by the Balliets. The withholding of this information constitutes the due process violation. Accepting this allegation as true, the claim would fail as a matter of law because the requisite causal link between Page's conduct and any alleged due process violation is absent. *See Estate of Bailey v. County of York*, 768 F.2d 503 (3d Cir. 1985). The child is identified as only one of the children named in the Commonwealth Court complaint as being sexually abused. DPW would have thus sought the injunction in any event on behalf of the other children. Additionally, since ultimately the Columbia County district attorney decided not to file criminal charges against the Balliets, the withholding of information during the investigation by DPW could not have violated due process in connection with these potential criminal proceedings. Page will be dismissed from this case since these are the only allegations against her. Moreover, we have concluded this conduct cannot form the basis of any claim against any other defendant.

Plaintiffs also complain about the inadequate use of a procedure to make psychological evaluations of the children and the

---

7. DPW did seek an injunction in the Pennsylvania Commonwealth Court prohibiting the Balliets from using their home as a day care center because they did not have a license and because of the alleged abuse of the children in their care. Certainly, there could be no due process violation arising from the court proceedings since DPW could not have acted unilaterally in obtaining the injunction. It still had to present its claim for relief to the court and plaintiffs would have received due process in those proceedings.

Balliets. The results were to be used in evaluating the charges. Apparently, the evaluations would have been favorable to the Balliets because they complain that in some instances the evaluation was not conducted and in others, while it was conducted, it was never forwarded to DPW for consideration.

■ It is difficult to perceive from these allegations the nature of the claim. There is no constitutional right to compel a state agency to follow its own procedures. Moreover, the investigation never resulted in criminal charges against the plaintiffs. Since the primary purpose of due process of law is to protect against erroneous decisions, *Mackey v. Montrym*, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979), and since plaintiffs are obviously not claiming that the decision not to prosecute them was erroneous, this claim must be dismissed unless plaintiffs can amend their complaint to assert in some *specific* fashion how due process was violated by the failure to use the psychological tests.

■ Defendant Mosier is accused of falsely informing plaintiffs that they did not need a state license to operate their baby-sitting service. This allegation, standing alone, is not actionable. While Mosier may have made the statement knowing it to be untrue, there is no apparent causal link between Mosier's conduct and the resulting investigation. Plaintiffs have not set forth when Mosier's representation was made and why it was made. Since plaintiffs were ultimately not charged with any criminal wrongdoing, this claim must fail unless plaintiffs can amend their complaint to show conduct violative of constitutional rights.

■ Plaintiffs claim that Hartman's threat to remove one of their minor children from their home was a blatant violation of their civil rights.

[T]he "liberty" protected by the due process clause of the Fourteenth Amendment includes the right to the custody of one's minor children and ... it would be a deprivation of that liberty without due process of law for persons acting under color of state law permanently to separate the children from their parents without notice and hearing.

*Ellis v. Hamilton,* 669 F.2d 510, 512 (7th Cir.) (brackets added), *cert. denied sub nom., Ellis v. Judge of the Putnam Circuit Court,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982).

Hartman, however, did not remove the child from the household so that there was no actual violation of plaintiffs' liberty interest. At most his threat was an intentional infliction of emotional distress which does not constitute a section 1983 claim. *See Brainerd v. Potratz,* 421 F.Supp. 836 (N.D.Ill.1976), *aff'd mem.,* 566 F.2d 1177 (7th Cir.1977); *Dawes v. Philadelphia Gas Commission,* 421 F.Supp. 806 (E.D.Pa. 1976).

### C. The Sixth Amendment Claim.

■ Plaintiffs allege that Hartman violated their sixth amendment right to confront the witnesses against them when he interviewed the children in the absence of their attorney.[8] Plaintiffs have cited no authority in support of their claim. We conclude that plaintiffs' sixth amendment right was not violated by Hartman's refusal to conduct his investigation in the presence of plaintiffs' counsel. Confrontation does not include investigatory stages.

### D. Fourth Amendment Claim.

■ Plaintiffs accuse Haas and Crozier of conducting illegal searches of their home, unrequired by any need of the foster child program. The due process clause of the fourteenth amendment protects persons from unreasonable searches in violation of the fourth amendment. *Gillard v. Schmidt,* 579 F.2d 825 (3d Cir.1978). Defendants object that the allegations are too vague for a civil rights complaint. We agree. If plaintiffs intend to pursue this matter these conclusional allegations

---

8. U.S. Const.Amend. VI provides, in pertinent part, that in "all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him ...."

should be amended to set forth the dates, times, and scope of the searches.

### E. *The Alleged Liability of CYS And the Commissioners.*

Plaintiffs claim that CYS refused to allow them legal representation at the interviews. Based upon the foregoing discussion in Part III C of this memorandum, this claim must be rejected.

Haas's searches are alleged to be pursuant to a policy of CYS and "by extension" of the Commissioners. Defendants complain that no facts have been alleged to support the conclusional allegation of an existing CYS policy concerning inspections and searches and that the Commissioners, in any event, cannot be found liable under a respondeat superior theory.

We disagree as to the conclusional nature of the allegations concerning policy. The complaint can fairly be read to assert that CYS has a policy in connection with its responsibilities of overseeing foster homes of conducting searches of the homes in an unreasonable manner, unrelated to the agency's duties of seeing that children placed in the homes are cared for properly. Under the circumstances, this is an adequate statement of the claim especially when it is considered that plaintiffs will be required additionally to plead specifically the time and manner of the searches.[9]

■ The County's and Commissioners' liability based upon this alleged CYS policy is clearly, as pleaded, only one for respondeat superior. This theory cannot support a civil rights claim. *Estate of Bailey v. County of York,* 768 F.2d 503 (3d Cir. 1985). Plaintiffs shall amend their complaint, if they can, to set forth facts showing County or Commissioner direction of CYS, actual knowledge of the alleged policy, or acquiescence on the part of the County and its Commissioners. *See Fialkowski v. Shapp,* 405 F.Supp. 946 (E.D.Pa.1975).

Plaintiffs assert that CYS had a hiring policy which resulted in inappropriate choices for the position held by Haas. Mosier was responsible for the CYS hiring process and the Commissioners "further supervised" it. Additionally, the training standards employed by CYS constituted a policy of that agency which violated plaintiffs' constitutional rights.

These allegations should be amended in light of our discussion above concerning the plaintiffs' claims for due process violations, and our discussion below concerning the inadequacy of the claims for verbal harassment. The only policies or procedures concerning hiring or training that survive these motions to dismiss concern those involved with inspections and searches. We also agree with defendants that the policies are not otherwise pleaded specifically enough. Recognizing that official agency policy may be inferred from informal acts or omissions of agency supervisory personnel, *Estate of Bailey, supra,* we direct plaintiffs to plead the hiring and training policies specifically.

The Commissioners' "further supervision" of the CYS hiring process, in light of our discussion above, is insufficiently pleaded to impose liability on the Commissioners. Plaintiffs are given leave to amend their complaint to attempt to meet the standard of *Fialkowski, supra.*

### F. *Invasion of Privacy.*

Plaintiffs have also claimed that defendants have violated a generalized right to privacy. Without a more specific contention, this claim must fail. *See Paul, supra.*

### G. *Claims Amounting To No More Than State Tort Claims.*

■ Hartman is alleged to have used profane and vulgar language during one investigative interview. Verbal abuse is

---

9. An additional issue in connection with the policy claims is whether plaintiffs are merely relying upon the incident involving themselves to establish the governmental policy. If so, the

claim may be defective. *See Oklahoma City v. Tuttle,* —— U.S. ——, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Estate of Bailey v. County of York,* 768 F.2d 503 (3d Cir.1985).

not a civil rights violation.[10] *See Hodgin v. Agents of Montgomery County*, 619 F.Supp. 1550 (E.D.Pa.1985); *Dawes, supra.*

We will issue an appropriate order.[11]

## ORDER

AND NOW, this 8th day of January, 1986, upon considerations of defendants' motions to dismiss, it is ordered as follows:

1. Plaintiffs' claims against defendant, Linda Page, are dismissed and Linda Page is hereby dismissed from this action.

2. Plaintiffs' claims based upon due process violations arising from Haas's conduct in supplying false and fraudulent information to the Department of Public Welfare are hereby dismissed.

3. Plaintiffs' claims against all other defendants based upon Haas's conduct described in paragraph 2 above, whether based upon personal involvement or promulgation of policy concerning the conduct or upon hiring and training procedures allegedly not responsive to such conduct are hereby dismissed.

4. Plaintiffs' claims based upon verbal abuse, interference with sixth amendment rights, and family relations, and defendant Hartman's determination that they were engaging in child abuse are hereby dismissed.

5. In all other respects, plaintiffs' complaint is hereby dismissed except that plaintiffs are hereby given leave to file a second amended complaint within twenty (20) days of the date of this order setting forth such claims as may be pursued in light of the accompanying memorandum. Any amended complaint shall be divided into separate Counts and shall fully comply with the Federal Rules of Civil Procedure and with decisional law.

---

10. Plaintiffs also allege that the County Commissioners refused to investigate DPW files relevant to Haas's competence after plaintiffs requested that they do so. Defendant Whitmire was named specifically as declining to become involved in the beginning of the investigation of the Balliets. As we read the statutory provision relied upon by plaintiffs, 11 P.S. § 2215(a)(11) (Purdon Supp.1985), that Section does not impose any duty upon the Commissioners to investigate Haas upon the request of any individual. Rather, the Commissioners may, at their own discretion, investigate an employee. This cannot form the basis of any claim against the County or its Commissioners. Additionally, indifference on the part of state actors to the plaintiffs' problems does not give rise to a civil rights claim. *Hodgin v. Agents of Montgomery County*, 619 F.Supp. 1550 (E.D.Pa.1985). The conduct may be relevant, however, to the claims based upon unconstitutional searches and inspections.

11. Plaintiffs' brief was of little assistance to the court in identifying, discussing and resolving the variety of issues addressed herein.