**John A. DILLMAN, III, Plaintiff,**

v.

**Col. L. Aaron CHAFFINCH, individually and in his official capacity as the Superintendent, Delaware State Police, Lt. Col. Thomas F. Marcin, individually and in his official capacity as the Deputy Superintendent, Delaware State Police, and Division of State Police Department of Safety, State of Delaware, Defendants.**

No. CIV.A.02–509–KAJ.

United States District Court, D. Delaware.

April 14, 2004.

See, also, 2003 WL 22415874.

Gary W. Aber, Aber, Goldlust, Baker & Over, Wilmington, DE, Counsel for Plaintiff.

Richard G. Placey, Montgomery, McCracken, Walker & Rhoads, LLP, Wilmington, DE, Montgomery, McCracken, Walker & Rhoads, LLP, Philadelphia, PA (Edward T. Ellis, Robert J. Fitzgerald, of counsel), for defendants.

## MEMORANDUM OPINION

JORDAN, District Judge.

Presently before me are two motions for partial summary judgment (Docket Items ["D.I."] 60 and 105) filed by defendants L. Aaron Chaffinch ("Chaffinch"), the Superintendent of the Delaware State Police, and Thomas F. Marcin ("Marcin"), the Deputy Superintendent of the Delaware State Police, in their individual and official capacities, and the Division of State Police within the Department of Public Safety of the State of Delaware ("DSP") (collectively the "Defendants"). Because those motions effectively deal with all of the counts in the Amended Complaint (D.I.46), they are treated as a single motion for summary judgment (the "Motion"). The Plaintiff, John A. Dillman, is the former Director of Human Resources for the DSP. He brings suit against the Defendants pursuant to 42 U.S.C. § 1983 for violation of his rights under the First and Fourteenth Amendment. I have jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1332, and 1343. For the reasons that follow, the Motion is denied, with the exception that summary judgment is granted for Defendants as to any claim that Plaintiff's discussion of the DSP's promotional practices, discussed more fully herein, constituted protected speech.

## I. BACKGROUND [1]

Plaintiff had been an employee of the State of Delaware for over 29 years, and

---

1. The following rendition of the background information for my decision is cast in the light most favorable to the non-moving party, the Plaintiff, and does not constitute findings of fact.

was the civilian Director of Human Resources for the DSP when his employment was terminated on April 12, 2002. (D.I. 1 at ¶ 4.) As ·the director of Human Resources for the DSP, Plaintiff was responsible for writing and recommending policies, managing the payment of benefits, supervising working conditions, and administering recruit and promotional testing. (D.I. 107 at Ex. A, p. 22.)[2] Plaintiff oversaw the disciplinary process for civilian employees, participated in collective bargaining, and handled administration of any contract between the State of Delaware and the police officers' union. (*Id.*) As one of the most senior human resource officers employed by the State of Delaware, Plaintiff's responsibilities affected all employees of the DSP. (*Id.* at p. 25.)

Plaintiff alleges that, since 1998, he has spoken out about issues "relating to the recruitment and selection process for uniformed officers of the DSP and legal and illegal efforts to promote diversity in the workforce of the DSP." (D.I. 1 at ¶ 7.) Plaintiff alleges that he has stated that "certain testing has an adverse impact on the recruitment of minorities, other testing is not discriminatory against minorities, standards to become a Delaware State Trooper have been unnecessarily reduced, efforts to recruit minority applicants were ineffective, and the police Academy Training process was in need of significant reform." (*Id.*)

Specifically, Plaintiff alleges that on or about November 1, 2001, he "spoke out against and opposed the inappropriateness" of Chaffinch's order to "rearrange the DSP promotional list[3] for the ranks of Sergeant and Lieutenant in order to promote diversity." (*Id.* at ¶ 12.) Plaintiff also alleges that, on December 12, 2001, he raised another issue, telling Marcin that the "new testing process for recruits, which the DSP was using, was not working." (*Id.* at ¶ 13.) On February 14, 2002, Plaintiff sent Chaffinch and Marcin emails "in which he advised [them] that current testing procedures 'may not be providing us with accurate information regarding a candidate's qualifications to perform the position of Recruit Trooper ....'" (*Id.* at ¶ 14; D.I. 13.) On March 4, 2002, Plaintiff "made numerous written recommendations to the individual defendants for major reforms in the Academy training of new recruits, such as eliminating its 'boot camp' atmosphere, restructuring the physical fitness component of the training program, and adopting theories used by the FBI." (*Id.* at ¶ 15; D.I. 13.) On March 19, 2002, Plaintiff advised Marcin, at a meeting, that Chaffinch also allegedly attended, that the tests "DSP was using in the recruitment process have an adverse impact on the recruitment of minority candidates[,] ... questioned the effectiveness of various portions of the testing process ... [and] stated that the testing was likely not valid." (*Id.* at ¶ 16; D.I. 13.)

Plaintiff claims that in retaliation for these comments, Marcin advised Plaintiff, on March 28, 2002, that he "was being involuntarily retired in two weeks" and "indicated that a change was necessary because of 'all that has occurred.'" (*Id.* at ¶ 17.) The Defendants do not deny that Marcin talked to Plaintiff about retiring on

---

**2.** Ex. A to D.I. 107 consists of excerpts from Plaintiff's deposition testimony.

**3.** The ranking or "banding" of candidates for promotion, at least as to the rank of sergeant, within the DSP ("promotional banding") is a three-step process. In the first part, the candidates take a written test, and, if they perform well enough, an oral exam. In the second part, the DSP applies a formula to place those who have successfully completed the testing process into groups called "bands," which is essentially like grading on a curve. In the third part, the Superintendent selects officers for promotion from among the "banded" candidates. (D.I. 106 at 3, n. 3.)

this date and told Plaintiff that "a change in his position was necessary." (D.I. 13 at ¶ 17.) Plaintiff requested a written statement of reasons for his termination, but only received a two sentence letter dated April 9, 2002, signed by Chaffinch, stating "that your last ·day of employment will be April 12, 2002." (D.I. 1 at ¶ 18; D.I. 13.) On April 12, 2002, Plaintiff's employment was terminated. (*Id.* at ¶ 20.)

In Count I of the complaint, Plaintiff brings claims against the Defendants pursuant to 42 U.S.C. § 1983 for violations of his right of free speech under the First Amendment. (D.I. 1 at ¶¶ 36–38.) Plaintiff alleges that his free speech rights were violated because the Defendants terminated his employment in retaliation for statements that he made regarding promotional banding and the test used to select new recruits. (*Id.* at ¶¶ 12–16.)[4] In Counts II and III of the amended complaint, Plaintiff brings claims against the Defendants pursuant to 42 U.S.C. § 1983 for deprivation of his property and liberty interests in his employment without due process of law under the Fourteenth Amendment. (D.I. 1, 46 at ¶¶ 39–54.) Plaintiff seeks a declaratory judgment, damages, including punitive damages, costs, interest, attorney's fees, and injunctive relief. (D.I.1.)

## II. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." "[T]he availability of summary judgment turn[s] on whether a proper jury question ... [has been] pre-

sented." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* In making that determination, the Court is required to accept the non-moving parties' evidence and draw all inferences from the evidence in the non-moving parties' favor. *Id.* at 255, 106 S.Ct. 2505; *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Nevertheless, the party bearing the burden of persuasion in the litigation, must, in opposing a summary judgment motion, "identify those facts of record which would contradict the facts identified by the movant." *Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.,* 311 F.3d 226, 233 (3d Cir.2002) (internal quotes omitted).

## III. DISCUSSION

### A. First Amendment

■ As discussed, Plaintiff alleges that his First Amendment rights were deprived as a consequence of his alleged retaliatory firing in 2002, and he brings those claims pursuant to 42 U.S.C. § 1983. (D.I. 1 at ¶¶ 36–38.) To make out a claim in a § 1983 action for violation of a First Amendment right by a public employer, the plaintiff must show that the speech which allegedly was the basis that the firing was "a matter of public concern" and that the plaintiff's interest in engaging that speech "outweighs the state's countervailing interest in promoting the efficiency

---

**4.** In the Complaint, the Plaintiff also asserts in Count I that the Defendants terminated his employment in part because of written recommendations that he made concerning the training conditions at the DSP Academy. (D.I. 1 at ¶ 15.) However, Plaintiff has with-

drawn that claim. In the answering brief, Plaintiff states that he "does not herein assert that the March 4, 2002 memo concerning academy training was a motivating factor in his dismissal." (D.I. 112 at 26).

of the public services through its employees." *Baldassare v. New Jersey*, 250 F.3d 188, 194–95 (3d cir.2001) (quoting the Supreme Court's instruction in *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) that courts to strike "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees"). Next, the plaintiff must show that the speech "was a substantial or motivating factor in the alleged retaliatory" firing. *Id.* at 195. If the plaintiff carries its burden on each of those issues, the burden shifts to the public employer to show it would have reached the same result in any event. *Id.*

■ According to Plaintiff, one of the reasons that the Defendants terminated his employment was because he "spoke out against and opposed the inappropriateness" of Chaffinch's order to rearrange the DSP's system of promotional banding "in order to promote diversity." (D.I. 1 at ¶ 12.) Under *Baldassare*, this speech is protected if it involves a matter of public concern and Plaintiff's interest outweighs the State's interest "in promoting the efficiency of the public services it provides through its employees." 250 F.3d at 195. The undisputed facts show that Plaintiff and Chaffinch had an internal discussion about the legality of potential changes in the DSP's approach to promotion of police officers. (D.I. 107, Ex. A at p. 149). Police officers have legitimate and serious concerns about the promotion process, and the Defendants do not argue, nor could they persuasively argue, that changes to that process are not a matter of public concern.

The undisputed facts also show that, while the potential changes to the DSP's process of promotional banding were being discussed internally by DSP's Management, the Plaintiff discussed those potential changes with Sgt. Vincent Fiscella, the head of the troopers' union.[5] (*See id.; id.* at Ex. C at pp. 153–155; D.I. 112 at 6.) Even though promotional banding was a matter of public concern, it was also a matter that, while options were under internal review by DSP management, could not have been divulged to the public, and, particularly to the troopers' union, without serious disruption to the decision-making of the DSP management. *See Sprague v. Fitzpatrick*, 546 F.2d 560, 564–565 (3d Cir. 1976) (holding that, although the Assistant District Attorney's critical comments about the District Attorney touched on important issues that fell within the purview of the First Amendment, the *Pickering* balance did not tilt in his favor because "the effectiveness of the employment relationship between employee-speaker and employer-target [was] so completely undermined"); *see also Versarge v. Township of Clinton*, 984 F.2d 1359, 1366 (3d Cir.1993) (holding that one of the factors in balancing the employer's interests in the speech was whether the speech "ha[d] a detrimental impact on close working relationships for which personal loyalty and confidence are necessary").

As discussed, Plaintiff, as Director of Human Resources for the DSP, was in a high position of privilege and trust. (D.I. 106 at 2, 9.) Plaintiff reported directly to Marcin, and had frequent interaction with Chaffinch on personnel matters affecting all DSP employees, including all police officers. (*Id.*) Consequently, close and confidential relationship with the leadership of

---

**5.** The Defendants characterize Plaintiff's discussion of potential changes to the DSP promotional banding process with the head of the troopers' union as an "intentional[] leak[][of] sensitive policy information." (D.I. 114 at 1).

the DSP was significantly undermined by the Plaintiff's leaking of still confidential information. Under those circumstances, maintaining the Plaintiff in his position as the Director of Human Resources for the DSP could reasonably have been viewed by the Defendants as being wholly impracticable.[6] Therefore, after balancing the Plaintiff's and the State's interests, I conclude that Plaintiff is unable to prove that his interest outweighs the State's interest.[7] *See Sprague*, 546 F.2d at 564 (finding that the "crucial variant in [the *Pickering* ] balance appears to have been the hierarchical proximity of the criticizing employee to the person or body criticized"). Accordingly, Plaintiff's speech regarding promotional banding was not protected speech.

■ That does not conclude the matter as to Count I, however, because there are other instances of speech that Plaintiff relies on in claiming that the Defendants violated his free speech rights.[8] Plaintiff also alleges in Count I of the Complaint that the Defendants terminated his employment for stating his belief that the test used to select new recruits, the so called "Landy–Jacobs" test, was "not working," "may not be providing us with accurate information regarding a candidate's qualifications to perform the position of Recruit

Trooper," and was "likely not valid." (D.I. 1 at ¶¶ 13–14, 16. ) The Landy–Jacobs test consisted of multiple parts, including a cognitive, or written test, and a work-styles inventory. (D.I. 112 at 17.) Plaintiff began doing research on the weightings of the different portions of the test and alleges that "it became evident that there was a problem with the work-styles part of the Landy–Jacobs test because people on that portion of the test might not be completely truthful." (*Id.*) As a result, Plaintiff asserts that there were inconsistencies between the cognitive test and the work-styles/biodata part, and these inconsistencies were creating concern that the test was not producing the number of minority candidates that were desired by the DSP. (*Id.*)

In an email dated February 14, 2002, a copy of which was sent to the Defendants, Plaintiff expressed to the vendor of the Landy–Jacobs test concern about these inconsistencies, and about the consequences for minority hiring. (*Id.*) Plaintiff also suggested in that email that the DSP was going to modify the Landy–Jacobs test. (*Id.*) On February 15, 2002, Michael Tupman ("Tupman"), a Deputy Attorney General, responded to Plaintiff's email and stated that were Plaintiff's suggestions re-

---

**6.** The Defendants assert that this leak "irreparably damag[ed] [Plaintiff's] working relationship with Defendants and ignit[ed] a firestorm inside the DSP." (D.I. 114 at 1.)

**7.** My holding is not intended to make any comment whatsoever on the propriety of the matters which were under consideration, or on the importance of quickly communicating decisions, once they are final, to those who might be affected by them. It is solely a holding that, on the undisputed facts pertinent to this issue, the State's interest in maintaining the confidentiality of sensitive internal discussions on matters as to which no final decisions had been made is superior to any interest the Plaintiff had in engaging in the particular speech at issue.

**8.** Even though Plaintiff's discussion with the president of the troopers' union was not protected speech, and the Defendants allege that they fired him because of this breach of confidentiality (*see* D.I. 106 at 6), the Defendants, like Plaintiff, claim that Plaintiff was fired for a "variety of reasons" (*see id.*), and a reasonable jury could conclude that one of those reasons was because Plaintiff, as he also alleges in Count I, criticized the test used for hiring new recruits. *See Azzaro v. County of Allegheny*, 110 F.3d 968, 981 (3d Cir.1997) (holding that Plaintiff's first amendment retaliation claim precluded summary judgment because it created a factual issue even where the assertion of a non-retaliatory reason would have justified the termination of Plaintiff's employment).

garding the test implemented, "the validity of the test goes out the window." (*Id.* at 18.) Plaintiff alleges that Marcin, Tupman, and Rose Killian, another Deputy Attorney General, had a meeting in March, where Tupman "insisted that the State Police Department had a validated test, which was defensible and that the [DSP] shouldn't try and do anything that might invalidate the test." (*Id.*) According to Plaintiff, Defendants feared that changing the Landy–Jacobs test might have negative consequences for the DSP because there was then pending litigation against the State regarding a hiring test the DSP had formerly used. (*Id.*) Subsequent to that meeting, on March 4, 2002, Plaintiff sent an email to one of the authors of the Landy–Jacobs test explaining his concerns. (*Id.* at 19.) On March 28, 2002, Plaintiff was notified that his employment was being terminated.

Plaintiff's statements concerning the validity of the test used by the DSP to hire new police officers was undoubtedly a matter of public concern, and the Defendants do not proffer any evidence that "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees" outweighs Plaintiff's interest in being able to engage in the speech. *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731. The Defendants merely argue that Plaintiff's speech regarding the recruit testing did not cause his termination. (D.I. 106 at 11–12.) Therefore, as a matter of law, I hold that Plaintiff has established that his speech regarding recruit testing was protected. *See Baldassare,* 250 F.3d at 195. That being established, Plaintiff "must then show the protected activity was a substantial of motivating factor" in the retaliatory firing. *Id.* Given the timing of this communication and the Plaintiff's firing, there is a genuine issue of material fact as to whether or not the views that Plaintiff was expressing with regard to the Landy–Ja-cobs hiring test were a substantial motivating factor in the Defendant's decision to terminate his employment. Accordingly, the Motion is denied on this aspect of Plaintiff's claim in Count I.

## B. Fourteenth Amendment

▇▇▇▇ As previously noted, Plaintiff alleges in Counts II and III of the Amended Complaint that the Defendants deprived him of due process under the Fourteenth Amendment. (D.I. 1, 46 at ¶¶ 39–54.) The Third Circuit has stated that a plaintiff is "entitled to due process if her expectation of continued employment constitute[s] a property interest." *Brown v. Trench,* 787 F.2d 167, 170 (3d Cir.1986). In *Brown,* the Third Circuit explained that a "just cause" provision in a County personnel manual created a property right in the plaintiff's job. *Id.* at 171. *See also Abraham v. Pekarski,* 728 F.2d 167, 170–171 (3d Cir.1984) (holding that a "just cause" provision gives rise to a property right); *Perri v. Aytch,* 724 F.2d 362, 366 (3d Cir.1983) (same). As in *Brown,* there is a "just cause" or "for cause" provision in the "Delaware State Police Civilian Manual" (the "Manual"). (D.I. 62 at Ex. B.) Pursuant to Chapter 18 of the Manual, if a civilian employee is terminated "for cause," the "reasons for dismissal will be provided to the employee in writing and the employee will be afforded the opportunity to offer his or her reasons why dismissal is not warranted." (*Id.*) Chapter 24 of the Manual states, if the employee's dismissal goes forward, the following process will be followed:

> First, the employee must be notified in writing of the potential for termination and the reasons which lead to the termination. Such writing must notify the employee that they have ten (10) days to request a pre-termination hearing.

The second step is the conducting of such a hearing before the Superintendent or his designee. The results of that hearing then provides a recommendation to the Secretary of Public Safety, as to whether or not the employee should be terminated . . . .

If the Secretary of Public Safety . . . determines that dismissal is appropriate, the employee is entitled to a letter listing the reasons for the termination and to appeal the dismissal.

(*Id.*) (Sections 24.2(D)(1)-(3)). The Manual also provides that "[e]mployment with the [DSP], except as modified by the conditions provided by this manual, is at the will of the employer." (*Id.*) As a civilian employee of the DSP, the "Delaware State Police Civilian Manual" (the "Manual") governed the employment relationship between Plaintiff and the DSP. (D.I. 93 at 2.)

The foundation of the Defendants' argument is that Plaintiff had no property interest in his employment, and was thus not entitled to notice or a hearing because he was an "at will" employee. As the Defendants acknowledged at oral argument (Mar. 10, 2004 Transcript ["Tr."] at pp. 29–31), however, the words "at will" in the Manual do not overcome the express provisions of the Manual which create a property interest for employees in their employment. *See Brown*, 787 F.2d at 170. The facts indicate, and the Defendants vociferously argued with respect to the First Amendment promotional banding issue, that Plaintiff was fired for what they viewed as breaches of trust and inadequate job performance. This is also reflected in the Fifth Affirmative Defense, where Defendants assert that "Plaintiff's termination was the result of his own acts and omissions, not the acts and omissions of others, including, but not limited to, plaintiff's unsatisfactory performance of his duties." (D.I 13 at 7.) (*See also* D.I. 106 at 6) (giving reasons for Plaintiff's termination). Having acknowledged at oral ar-

gument that termination for cause implicates the processes set forth in the Manual and hence implicates property interests, and having asserted that what was in play here did involve a decision to terminate Plaintiff for cause, the Defendants' argument that Plaintiff was an "at will" employee" and not fired for cause (Tr. at pp. 30–31) is, to say the least, a matter as to which there remains a genuine issue of material fact. The Motion is therefore denied with respect to Count II.

■ As to the liberty interest claimed in Count III of the amended complaint, Plaintiff argues that the "actions of the defendants have damaged the plaintiff in both his personal reputation and his professional reputation thereby denying him a property interest in his employment, and damaging [h]is protected liberty interest." (D.I. 46 at ¶ 53.) The Third Circuit, in *Robb v. City of Philadelphia*, 733 F.2d 286, 294 (3d Cir.1984) held that "[s]tigma to reputation alone, absent some accompanying deprivation of present or future employment, is not a liberty interest protected by the fourteenth amendment." Because Plaintiff argues that the Defendants have damaged his reputation and thus deprived him of the ability "to find other work in his chosen field" (Tr. at p. 46), and the Defendants have not argued in their briefs or at oral argument that Plaintiff's liberty interest has not been deprived in this manner, there remains a genuine issue of material fact as to whether Plaintiff can demonstrate the alleged deprivation of a protected liberty interest. Therefore, the Motion is denied as to Count III.

## IV. CONCLUSION

The Motion is denied, but summary judgment is granted as to any claim that Plaintiff's discussion of the DSP's pro-

motional practices constituted protected speech.

### *ORDER*

For the reasons stated in the Memorandum Opinion issued today,

IT IS HEREBY ORDERED that the Motion (D.I. 60 and 105) is DENIED, but summary judgment is granted as to any claim that Plaintiff's discussion of the DSP's promotional practices constituted protected speech.