ROBB, James, Appellant,

v.

CITY OF PHILADELPHIA and Mann, Fredric R. and Horowitz, Vladimir and Crawford, Robert W. and Washington, Nathaniel and Doe, John.

No. 83–1578.

United States Court of Appeals, Third Circuit.

Argued March 8, 1984.

Decided May 7, 1984.

Gary Green, Neil A. Morris (argued), Sid-koff, Pincus, Greenberg, & Green, P.C., Philadelphia, Pa., for appellant.

Bernard G. Segal, Jerome J. Shestack, David Smith (argued), Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appel-lee Fredric R. Mann.

Steven R. Waxman (argued), Jane Rud-dell, Bolger & Picker, Philadelphia, Pa., for appellee Vladimir Horowitz.

Marilyn Z. Kutler, Barbara R. Axelrod, Michael B. Tolcott (argued), Asst. City Sol., Philadelphia, Pa., for appellees, City of Philadelphia, Robert W. Crawford, and Na-thaniel Washington.

Before ALDISERT, BECKER and PECK,* Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

In this appeal by plaintiff-appellant James Robb from a dismissal of his com-plaint under Rule 12(b)(6), F.R.Civ.P., for failure to state a claim upon which relief could be granted, we must decide whether his complaint made out a sufficient claim for relief under 42 U.S.C. § 1983.[1] The complaint charges a conspiracy among pri-vate individuals, public officials, and the City of Philadelphia to transfer Robb from one civil service position to another and deny him a promotion in retaliation for his refusal to settle a private lawsuit, his union activity, and statements he made to the press. It avers that these actions deprived him of (1) property and liberty without due process of law in violation of the four-

---

* Honorable John W. Peck, of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

1. Section 1983 provides:
    Every person who, under color of any stat-ute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other per-son within the jurisdiction thereof to the dep-rivation of any rights, privileges, or immuni-ties secured by the Constitution and laws, shall be liable to the party injured in an ac-tion at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

teenth amendment and (2) freedom of speech and association in violation of the first amendment. It also avers that defendants' actions violated state law. We hold that although Robb failed to demonstrate a property or liberty interest that could form the basis of a fourteenth amendment due process claim cognizable under § 1983, he did make out a sufficient claim for relief under § 1983 based on the first amendment. Accordingly, we affirm the judgment of the district court in part, reverse in part, and remand for consideration of Robb's first amendment claims and his pendent state law claims.

## I.

We begin with a summary of the facts, culled from plaintiff's complaint. Robb is a career civil service employee of the City of Philadelphia. He joined the city's Department of Recreation in 1972 at the salary level of "Recreation Leader One." In 1973, he was assigned to the Cultural Affairs and Special Events Division of that department. Sometime in early 1980, Robert W. Crawford, then Commissioner of Recreation, issued an administrative order designating Robb as manager of the Robin Hood Dell East, a city-operated outdoor amphitheater. As manager, Robb scheduled concerts and promoted the Dell and its activities.

Completely aside from his civil service position, Robb also serves, ostensibly after hours, as president of the Performing Arts Society of Philadelphia, a non-profit charitable trust dedicated to the promotion and presentation of concerts at reasonable prices. In 1978, as president, he arranged for Vladimir Horowitz, a world famous concert pianist, to give a concert in Philadelphia. Robb claims that Horowitz breached his contract, and Robb threatened to sue. At Horowitz's behest, Fredric R. Mann, an influential Philadelphian and friend of Horowitz, got involved in the controversy, warning Robb not to institute suit. Robb ignored this admonition and filed suit against Horowitz in New York on May 22, 1980.

The complaint contends that on May 31, 1980, Mann accosted Robb at a concert. After grabbing him by the shoulders, banging his head against a brick wall, and choking him, Mann told Robb that he had been secretly negotiating with Roy Cohn, Robb's attorney in the Horowitz suit, and that they had effected a settlement adverse to Robb's interests. A few days later, Robb was presented with the supposed settlement agreement, which he rejected. The following day, Crawford, Robb's superior in the Department of Recreation, ordered Robb to accompany him to the Locust Club in Philadelphia to attend a meeting called by Mann. At the meeting, Mann again ordered Robb to sign the settlement agreement. When Robb refused, Mann stated that if he did not sign, Mann would cause Robb to lose his position as manager of the Dell and that Crawford would support him in that effort. Crawford said nothing, and Robb walked out of the meeting. Crawford later berated Robb for being discourteous to Mann.

Robb averred that Crawford and Mann continued to harass him throughout the summer and fall of 1980. In July, Crawford took steps to put Robb's job performance in a false light by prohibiting him, *inter alia*, from spending money that had been budgeted for advertising at the Dell and then falsely attributing the resulting drop in attendance to Robb's performance. In August, Mann caused Cohn, Robb's attorney in the Horowitz case, to resign. In September, after repeated, unsuccessful attempts to get Robb to sign the settlement agreement, Mann told Robb that he would ensure that Robb did not get promoted or get any work assignments involving cultural affairs. Also about this time, Robb, in exercising his rights under a collective bargaining agreement, requested a job audit to determine if "out of job classification" pay was due him under the civil service regulations because he was still being paid at the rate of recreation leader even though he was performing the function of manager of the Dell.

In October 1980, in conjunction with Mann and others, the city created the position of "Cultural Affairs Director." Robb contends that the city did not place the position under the Department of Recreation, where it belonged, but under the City Representatives' Office. In addition, the city departed from its accepted practice of promulgating fair job qualifications for the position and instead skewed the qualifications so its pre-selected candidate, David Speedie, an associate and friend of Mann, would be the only person who could qualify for the position. Robb claims that these actions were designed to exclude him from consideration for a position that Mann had promised him in return for settling the Horowitz lawsuit, that would have represented a promotion, and for which he was eminently qualified.

During the next eight months, Mann and various city officials, including Nathaniel Washington, Crawford's replacement, continued to fight Robb's refusal to settle the Horowitz suit. They ignored the results of a job audit, released in the spring of 1981, that suggested that Robb was entitled to have his manager position upgraded in salary. In addition, they were particularly upset by statements they suspected Robb made to the press, as reported by the *Philadelphia Daily News* in June and early July of 1981. Thus, on July 22, 1981, they caused Robb to be removed from his position as manager of the Dell, replacing him with persons less qualified than he. In further retaliation, Robb was transferred in August 1981 from the Cultural Affairs and Special Events Division of the Department of Recreation to a playground supervisory position within the department.

Believing that defendants had conspired to deprive him of (1) liberty and property without due process of law in violation of the fourteenth amendment and (2) freedom of speech and association in violation of the first amendment, Robb sought relief in district court under § 1983. He also sought relief under Pennsylvania state law. The district court dismissed the federal claims for failure to state a claim for relief under § 1983 and accordingly dismissed his pendent state law claims. Robb appealed.

## II.

Before us, Robb contends that his complaint sets forth a valid claim for relief under § 1983. He proceeds on the theory that Horowitz, Mann, the City of Philadelphia, and its present and former Recreation Commissioners—Crawford and Washington—conspired to deprive him of stated rights guaranteed by the Constitution. Specifically, his complaint avers that by transferring him from his position as manager of the Dell to a playground staff position and denying him a promotion to the position of Cultural Affairs Director in retaliation for his refusal to drop his lawsuit against Horowitz, defendants deprived him of property and liberty without due process of law in violation of the fourteenth amendment. It further avers that because the transfer was in retaliation for statements he made to the *Philadelphia Daily News* and because the transfer and denial of promotion were in retaliation for his efforts to enforce his collective bargaining agreement, defendants deprived him of freedom of speech and association in violation of the first amendment.

On review, we must accept all of the well-pleaded allegations of the complaint as true and construe the complaint liberally in the light most favorable to plaintiff, *Gomez v. Toledo*, 446 U.S. 635, 636 n. 3, 100 S.Ct. 1920, 1921 n. 3, 64 L.Ed.2d 572 (1980); *Jennings v. Shuman*, 567 F.2d 1213, 1216 (3d Cir.1977). We should not affirm a dismissal at the pleadings stage, especially of a civil rights action, unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Scher v. Board of Education*, 424 F.2d 741, 744 (3d Cir.1970).

To establish a valid claim under § 1983, a claimant must show: (1) that the conduct complained of was committed by a person acting under color of state law; and

(2) that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). We will now examine Robb's complaint in light of these requirements.

## III.

The initial inquiry to be made in assessing Robb's federal claims is to determine whether the statutory prerequisites of § 1983 have been met. Although immune from liability under the interpretation of the statute in the seminal case of *Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961), a municipality may now be held liable under § 1983 where the alleged unconstitutional action "implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). Specifically, it may be held liable under § 1983 for its employment-related decisions. *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Clearly, Crawford and Washington may be exposed to liability because they are city officials. *Monroe*, 365 U.S. at 172, 81 S.Ct. at 476. Whether Mann and Horowitz may be sued under § 1983 presents a more difficult problem because recovery is based on conduct "under color of state law," and they are private citizens, not public officials. It becomes necessary, therefore, to determine whether, as private citizens, their alleged conduct constitutes state action.

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), is the most recent Supreme Court case dealing with the issue of when conduct by a private party satisfies the "under color of state law" requirement of § 1983. In *Lugar*, the petitioner asserted that private party defendants deprived him of due process by their utilization of Virginia's prejudgment attachment procedures. The Supreme Court held that to the extent that petitioner challenged the constitutionality of the statute, he presented a valid cause of action; he did not insofar as he alleged only misuse or abuse the statute because there was no state action. 457 U.S. at 942, 102 S.Ct. at 2756. The Court reached its result by applying the following two-prong test, the second prong of which is most critical here:

the conduct allegedly causing the deprivation of a federal right must be fairly attributable to the state. [The] cases reflect a two-part approach to this question of "fair attribution." First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who fairly may be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State. Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them.

457 U.S. at 937, 102 S.Ct. at 2754.

In *Cruz v. Donnelly*, 727 F.2d 79 (3d Cir.1984) (per curiam), we found an absence of state action and affirmed the entry of summary judgment in favor of an operator of a retail food store and its employees who were sued under § 1983 after two police officers, acting at the request of the company's employee, stripped and searched the plaintiff for stolen goods. We explained:

[W]e cannot say that either the complaint or the affidavits suggest the existence of a pre-arranged plan by which the police substituted the judgment of private parties for their own official authority. Absent allegations or facts tending to show such a plan, neither [of the private party defendants] can be said to have engaged

in the "concert[ed]" or "joint action" with the police necessary to bring them within the scope of a § 1983 claim.

At 80.

We explained the application of the "state actor" prong of the *Lugar* test as follows:

[T]he critical issue before us today is whether the state, through its agents or laws, has established a formal procedure or working relationship that drapes private actors with the power of the state.

*Id.* at 82.

■ While *Lugar* is somewhat opaque, it appears that the Court's opinion, particularly in terms of its disposition of count II of Lugar's complaint, creates a higher standard for § 1983 liability of private defendants allegedly acting in concert with state actors than for state actors themselves. *See generally The Supreme Court 1981 Term*, 96 Harv.L.Rev. 245–46 (1982). However, we need not explore the contours or ramifications of this facet of § 1983 jurisprudence here for, although we believe that the issue is close in this case, we are of the view that at least for purposes of a Rule 12(b)(6) motion, the complaint is sufficient. We conclude that the complaint's averment of this working relationship drapes private actors Mann and Horowitz with the power of the state. Although private citizens, the complaint avers that they acted in concert with city officials and that in transferring Robb and denying him a promotion, the city officials substituted the judgment of private citizens for their own official authority. We now turn to the substance of the fourteenth amendment claims.

### IV.

The fourteenth amendment prohibits state deprivations of life, liberty, or property without due process of law. Application of this prohibition requires a familiar two-stage analysis: we first must ask whether the asserted individual interests are encompassed within the fourteenth amendment's protection of "life, liberty, or property"; if protected interests are implicated, we then must decide what procedures constitute "due process of law." *Board of Regents v. Roth*, 408 U.S. 564, 569–72, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972); *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). We first address the property interest contention.

### A.

■ Robb avers that he was deprived of his property interests in continued employment as manager of the Dell and in promotion to the position of Cultural Affairs Director. But to have a property interest in a benefit that is protected by procedural due process, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. Property interests are not generally created by the Constitution. "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.; see also Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

■ Under Pennsylvania law, a civil servant has a limited right to continued employment. He or she may not be "removed, discharged, or reduced in pay or position, except for just cause." Pa.Stat. Ann. tit. 53, § 12638 (Purdon 1957). The Philadelphia Civil Service Regulations, which are deemed to have "the force and effect of the law," *id.* § 12633, restate this statutory provision as follows: "Any dismissal or demotion ... of any employee in the Civil Service shall be for just cause only." Phil.Civ.Serv.Reg. 17.01. A civil servant may be reassigned, however, from one position to another in the same class at the direction of an appointing authority who has jurisdiction over both the employ-

ee and the class. Phil.Civ.Serv.Reg. 13.02. In addition, a civil servant may be given a temporary change in assignment as follows:

With the approval of the appropriate department head or his deputy, there may be assigned to an employee duties appropriate to a higher class of position than that in which the employee is employed, provided however, that such out-of-class work assignment may not continue for more than thirty (30) calendar days during a ninety (90) day period .... Should such assignment continue beyond thirty (30) days it shall be reported to the Director and a new appointment must be made in compliance with the provisions of the Regulations relating to such appointments.

Phil.Civ.Serv.Reg. 5.11. Thus, a civil servant only has a legitimate claim of entitlement to continued employment in a given class.

■ Robb admits in his complaint that he was not dismissed or demoted; he was merely transferred. App. at 18. Thus, he is currently employed in the same job classification and at the same salary level that he had before he was assigned to the position of manager of the Dell. Moreover, Robb's "out of class assignment" to the Dell position was temporary and involved no increase in salary. Consequently, Robb had no legitimate claim of entitlement under the Constitution or laws of Pennsylvania to continued employment as manager of the Dell. *See Rutledge v. Arizona Board of Regents,* 660 F.2d 1345 (9th Cir. 1981) (holding state university student was not deprived of property interest under the fourteenth amendment where he was demoted from first string to last string on the school's football team but retained his athletic scholarship).

■ In addition, Robb can claim no legitimate entitlement to promotion to the position of Cultural Affairs Director. The civil service regulations indicate that promotion is neither a matter of right nor may it be promised. It is based on successful completion of a promotional examination.

Phil.Civ.Serv.Reg. 9.02. The examination takes into account "the competitor's qualifications, record of performance, seniority and conduct and . . . other matters deemed pertinent ...." Phil.Civ.Serv.Reg. 9.022. Yet Robb admits in his complaint that he did not meet the civil service qualifications for the directorship. App. at 17. Moreover, the complaint contains no allegations that would permit an inference that he has taken and passed the civil service promotional examination that would bring him within the classification for that position. Because he can show neither entitlement to continued employment as manager of the Dell nor entitlement to promotion to the position of Cultural Affairs Director, Robb fails to demonstrate a property interest that can form the basis of a fourteenth amendment due process claim cognizable under § 1983. Without meeting this threshold requirement, he may not be heard on the allegations that he suffered a denial of federally guaranteed due process rights because of the machinations of the defendants. If he is to succeed with his fourteenth amendment claim, therefore, he must show a deprivation of liberty.

B.

■ Robb avers that by denying him a promotion and by transferring him from the position of manager of the Dell to a playground supervisory position, defendants caused him "ridicule, shame, embarrassment, humiliation, and frustration" that deprived him of liberty. The liberty interests protected by procedural due process are broad in scope. *See, e.g., Stanley v. Illinois,* 405 U.S. 645, 647–49, 92 S.Ct. 1208, 1210–11, 31 L.Ed.2d 551 (1972); *Bolling v. Sharpe,* 347 U.S. 497, 499–500, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). "[Liberty] denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those

privileges long recognized ... as essential to the orderly pursuit of happiness by free men." *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). An employment action implicates a fourteenth amendment liberty interest only if it (1) is based on a "charge against [the individual] that might seriously damage his standing and associations in the community ..., for example, that he had been guilty of dishonesty, or immorality" or (2) "impose[s] on him a stigma of other disability that forecloses his freedom to take advantage of other employment opportunities." *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707. Stigma to reputation alone, absent some accompanying deprivation of present or future employment, is not a liberty interest protected by the fourteenth amendment. *Id.* at 574, 92 S.Ct. at 2707; *Paul v. Davis,* 424 U.S. 693, 701–06, 96 S.Ct. 1155, 1160–63, 47 L.Ed.2d 405 (1976).

■ We have no difficulty in concluding that Robb has not been deprived of a liberty interest cognizable under the fourteenth amendment. First, he alleges no facts that would suggest that the transfer or failure to promote were based on any charge of immorality. In fact, there was not even an allegation that he was guilty of any immoral conduct. Robb suggests instead that the employment actions taken against him were based on either his refusal to drop his private lawsuit against Horowitz, his union activity, or his statements to the press. Second, the transfer and failure to promote caused no deprivation of employment. As set forth in our discussion of deprivation of property, Robb is still employed by the City of Philadelphia at the same classification level and pay scale that he had before being temporarily assigned to the position of manager of the Dell. In addition, he was not deprived of future employment as Cultural Affairs Director because he did not meet the stated qualifications for the position. Any reputational damage he may have suffered, therefore, does not alone constitute a deprivation of liberty. Further, to the extent that Robb alleges a violation of substantive due process based on an intentional and malicious deprivation

of liberty, his claim must fail because there is no underlying deprivation. *See Rutherford v. United States,* 702 F.2d 580 (5th Cir.1983). He has failed, therefore, to meet the essential prerequisites to be heard on the claim of a due process deprivation. We now turn to his first amendment contentions.

#### V.

The only federal contentions that remain in this case are Robb's first amendment allegations. These are specifically set forth in his complaint:

24. As a result of Plaintiff's refusal to voluntarily drop the said lawsuit instituted against Defendant Horowitz, all of the defendants, acting as aforesaid, schemed, conspired, acted and continued to act against Plaintiff, in and around Philadelphia, during the period May 1, 1980 through the present, and ratified each others' acts with knowledge of the same, all for the purpose of first coercing Plaintiff to drop the said lawsuit against Horowitz and then to punish Plaintiff for his refusal to do so, and for Plaintiff's exercise of First Amendment rights.

. . . . .

30. In addition, defendants have conspired and acted against plaintiff as aforesaid because of actual statements, or those suspected by defendants, which plaintiff has made to the media in the exercise of his First Amendment rights, including *inter alia*: statements which defendants suspected plaintiff of making as appeared in columns written by Chuck Stone in the *Philadelphia Daily News* on July 9th and 10th, 1981; statements which defendants suspected plaintiff of making which appeared in a column written by Kit Konolige in the *Philadelphia Daily News* on June 15, 1981; statements of plaintiff and attributed to plaintiff which appeared in a column written by Rose DeWolf in the *Philadelphia Bulletin* on August 18, 1981; statements defendants suspected plaintiff of making

which appeared in an editorial in the *Philadelphia Daily News* on September 29, 1981.

31. In addition, defendants have conspired and acted against plaintiff as aforesaid because plaintiff: has exercised his rights of association through participation in his labor union; has filed grievances, has sought to enforce, or assist his union in enforcing the collective bargaining agreement it had with Defendant City; and because plaintiff has exercised his right to petition to the government.

40. Solely as a result of defendants' said acts, plaintiff has been deprived, and is being deprived, without due process, of property, positions in employment, salary, promotions, job duties, benefits and other emoluments to which plaintiff has a right, and in addition, plaintiff has suffered and is suffering a denial and infringement of his First Amendment rights.

App. at 10, 19, 21.

■ The Supreme Court has made it clear that a distinction exists between the entitlement to a benefit that gives rise to a property interest protected under the fourteenth amendment due process clause and a benefit that is protected under the first amendment. *Perry v. Sindermann*, 408 U.S. at 597, 92 S.Ct. at 2697. Those acting under color of state law may not deny a benefit to a person on a basis that infringes his constitutionally protected interest in freedom of speech, regardless of whether the person has a "right" to that benefit. *Id.*

For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not command directly." *Speiser v. Randall*, 357 U.S. 513, 526 [78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460]. Such interference with constitutional rights is impermissible.

*Id.* The Supreme Court has often applied this general principle to denials of public employment.[2]

■ Although we have determined that for due process considerations Robb has not been deprived of any property interest because he has not suffered a salary loss or civil service demotion, he arguably has been denied the benefits of prestige by not being continued in the position of manager of the Dell or promoted to the position of Cultural Affairs Director. We conclude, therefore, that the complaint sets forth the bare bones of a claim for which relief may be granted. Having the advantages of our determination that Robb sustained no property or liberty interest to be vindicated by the fourteenth amendment due process clause, the district court, upon development of a suitable record, will be required to determine (1) the identity of those benefits, if any, lost by plaintiff that were caused by a first amendment deprivation and (2) whether the conduct that caused the deprivation is fairly attributable to the state. Specifically, it will have to determine whether private citizens Mann and Horowitz engaged in the concerted or joint action with public officials Crawford and Washington and the City of Philadelphia necessary to bring them within the scope of Robb's § 1983 claim.[3] In addition, we

2. See cases collected in *Perry v. Sindermann*, 408 U.S. at 597, 92 S.Ct. at 2697. *See also Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

3. In making this determination, the district court should be cognizant of the high degree of proof required to pin the state action label on private citizens. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). While we find Robb's allegations of concerted action sufficient to withstand a Rule 12(b)(6) dismissal of his claims against Horowitz and Mann, we are not at all confident, now that his fourteenth amendment due process claims have been eliminated, that he will be able to prove that private actors conspired with public officials to effect a deprivation of his first amendment rights. Nonetheless, it is not for us to conclude, at this stage of the proceedings, that Robb's § 1983 claims against Horowitz and Mann fail as a matter of law; such a determination must await further factual development by the district court.

leave it to the district court to determine in the first instance such questions of abstention, res judicata, and mootness as may have ripened by events occurring since the entry of the district court judgment. Finally, in view of our holding that the first amendment contentions survive a Rule 12(b)(6) dismissal motion, the court will reconsider the question of pendent jurisdiction over the allegations made under state law.

## VI.

We have carefully considered all contentions presented by appellant. The judgment of the district court on the fourteenth amendment due process contentions will be affirmed. The judgment of the district court on the first amendment claims will be reversed and the cause remanded in accordance with the foregoing.[4]

Each side to pay its own costs.

---

**4.** Because of the view we take, we grant the various motions before us asking us to supple-

ment the briefs and appendices.