John Joseph PERRY, Appellant

v.

LACKAWANNA COUNTY CHILDREN & YOUTH SERVICES; Lt. Jodi Smith, of SCI Waymart; Laura Banta, Prison Hearing Examiner at SCI Waymart; Superintendent Joseph Nish, at SCI Waymart.

No. 09–2403.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to 28 U.S.C. § 1915(e)(2)(B) or for Possible Summary Action

Pursuant to Third Circuit L.A.R. 27.4 and I.O.P. 10.6 Sept. 17, 2009.

Opinion filed: Sept. 18, 2009.

John Joseph Perry, Waymart, PA, pro se.

A. Leigh Redmon, Esq., Scranton, PA, for Lackawanna County Children & Youth Services; Lt. Jodi Smith, of SCI Waymart;

Laura Banta, Prison Hearing Examiner at SCI Waymart; Superintendent Joseph Nish, at SCI Waymart.

Before: MCKEE, FISHER and CHAGARES, Circuit Judges.

OPINION

PER CURIAM.

Appellant John Joseph Perry seeks review of the District Court's order dismissing his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). We conclude that the appeal does not present a substantial question. Although we rest our decision in part on different grounds, we will summarily affirm the District Court's judgment. *See* 3d Cir. L.A.R. 27.4; I.O.P. 10.6.

I.

Perry, an inmate at SCI–Waymart, initiated a *pro se* civil action pursuant to 42 U.S.C. § 1983 against Lackawanna County Children & Youth Services ("CYS") and three SCI–Waymart officials: Jodi Smith, Laura Banta, and Joseph Nish. In the complaint, Perry alleged that an individual named Joseph Pierro stole a letter Perry had sent to his girlfriend, Karen Marie Kuehner.[1] According to Perry, Pierro provided the letter to Lackawanna County Children & Youth Services ("CYS") and reported that the letter showed that "strong sexual contact" had occurred between Perry and Kuehner during an October 4, 2008, visit at which Perry's two minor children were present.

Based upon the information in the letter, CYS allegedly contacted SCI–Waymart and requested an investigation into Perry's behavior. Perry claimed that officials at SCI–Waymart wrongfully put a copy of the letter into his disciplinary file and used it as a basis to punish him. Specifically, Perry alleged that SCI–Waymart employee Jodi Smith viewed a videotape of the October 4, 2008, visit between Kuehner and Perry, and observed no rule infractions. However, based upon the contents of the letter and Smith's review of a videotape of an October 11, 2008, visit between Kuehner and Perry at which no children were present, Smith concluded that "strong sexual contact" likely occurred as reported, and accordingly issued a misconduct report against Perry.[2]

According to the complaint, SCI–Waymart granted Perry a formal hearing concerning the misconduct report.[3] Perry allegedly wished to enter a plea of not guilty, but the hearing examiner, Laura Banta, proceeded as if Perry had entered a guilty plea. Without honoring Perry's request for Banta to review the videotapes of the October 4 and 11 visits, Banta sanctioned Perry to 30 days of solitary confinement, 60 days without visiting privileges, and loss of institutional employment. Perry appealed to the prison review committee, the superintendent, and the chief hearing examiner, but the appeals were all denied based on Perry's purported guilty plea.

---

**1.** Perry alleged that the letter was in Kuehner's purse when Pierro stole it, and that Kuehner reported the theft to the Scranton Police Department.

**2.** Perry also alleged that SCI–Waymart provided the misconduct report to CYS, which initiated its own investigation concerning the welfare of Perry's minor children during visits to SCI–Waymart. Ultimately, CYS found no

evidence of neglect, although Perry complains that "the report has been added to [his] file ... and can be used in the family court for any proceeding pertinent to the plaintiff's custody of his minor children."

**3.** Perry also alleged that he filed two grievances and a request for review of the videotaped visits. SCI–Waymart officials denied the requests.

Based upon these events, Perry claimed to have suffered violations of his constitutional rights. As relief, he sought to have his "record cleared of all reports concerning this claim," criminal prosecution concerning "all false reports made against" him,[4] and recovery of his costs and fees.

Because the District Court granted Perry permission to proceed *in forma pauperis* ("IFP"), it reviewed the complaint under the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915. On April 28, 2009, prior to service, the District Court concluded that Perry's complaint was frivolous and dismissed it without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). This timely *pro se* appeal followed.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.[5] Our standard of review is plenary. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Because Perry is proceeding IFP, we must dismiss the appeal under 28 U.S.C. § 1915(e)(2)(B) if it lacks an arguable basis in fact or law. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). We may summarily affirm if the appeal presents no substantial question. *See* 3d Cir. L.A.R. 27.4; I.O.P. 10.6. We may affirm on grounds different from those relied upon by the District Court. *See Morse v. Lower Merion School Dist.*, 132 F.3d 902, 904 (3d Cir.1997).

To establish a § 1983 civil rights claim, a claimant must show: "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived a person of

rights, privileges, or immunities secured by the Constitution or laws of the United States." *Robb v. City of Philadelphia*, 733 F.2d 286, 290–91 (3d Cir.1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). Liberally construing Perry's *pro se* complaint, *see Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir.2003), we conclude that Perry failed to state a § 1983 claim.

### A.

CYS is an agency of Lackawanna County, Pennsylvania. To state a § 1983 claim against such a local governing body, Perry was required to allege that CYS had an established policy or custom that resulted in the alleged constitutional violations. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *see also Marran v. Marran*, 376 F.3d 143, 155–56 (3d Cir.2004) (a *prima facie* claim against a county or its agency must involve an allegation of a policy or custom that directed or caused the constitutional deprivation). Perry's complaint cannot be read to identify any custom or policy by CYS to satisfy the *Monell* requirement. Accordingly, dismissal was appropriate.

### B.

We therefore turn to Perry's claims against the three named SCI–Waymart officials, Smith, Banta, and Nish. Perry's claims against the officials focus primarily on his personal letter to Kuehner: he contends that the officials should have known that the letter was stolen and should not

---

**4.** Although Perry sought to have criminal charges brought against the defendants, such relief may not be obtained in a civil action under 42 U.S.C. § 1983.

**5.** Although the District Court dismissed Perry's complaint without prejudice, we have ju-

risdiction because the dismissal was pursuant to § 1915(e) and because any amendment of the complaint would be futile. *See Deutsch v. United States*, 67 F.3d 1080, 1083 (3d Cir. 1995).

have considered it, and that because the letter did not specify a date and location of the "strong sexual contact," it did not provide "probable cause" for the investigation or disciplinary action against him.

■ Even affording Perry's allegations the liberal construction they are due, we fail to see how Perry's allegations concerning his letter to Kuehner can support a § 1983 claim against the SCI–Waymart officials. Perry specifically invoked the First, Fourth, and Ninth Amendments of the Constitution. With regard to the Fourth Amendment, Perry did not allege that anything was seized from him, and in any event, it is well established that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). With regard to the First Amendment, Perry did not claim any interference with his constitutionally-protected right to reasonable correspondence with the outside world, *see Procunier v. Martinez*, 416 U.S. 396, 418, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), overruled on other grounds, *Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989), and a single instance of interference with his mail would not have been sufficient to constitute a First Amendment violation in any event. *See Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir.1995), overruled on other grounds, *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Finally, we are not aware of any support for Perry's claim that the Ninth Amendment protects against any of the events described in his complaint. Indeed, the Ninth Amendment does not independently provide a source of individual constitutional rights. *See, e.g., Jenkins v. C.I.R.*, 483 F.3d 90, 92 (2d Cir.2007); *Schowengerdt v. United States*, 944 F.2d 483, 490 (9th Cir.1991).

Based upon our review, we conclude that the only potential § 1983 claim that Perry might have raised against the SCI–Waymart officials would be a procedural due process claim relating to the disciplinary proceedings against him. In that regard, we have given particular consideration to Perry's allegations that he sought to plead "not guilty" to the disciplinary infraction, but the SCI–Waymart officials failed to consider his proposed evidence (*i.e.,* review of the October 4 and 11 videotapes), imposed sanctions upon him, and denied his appeals, all based upon a purported guilty plea.

Not all disciplinary or punitive measures taken in a prison environment implicate a prisoner's constitutional right to procedural due process. Rather, due process rights are only triggered where the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Mitchell v. Horn*, 318 F.3d 523, 531 (3d Cir.2003) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). Prisoners generally do not have inherent liberty interests in particular modes, places, or features of their confinement. *See Hewitt v. Helms*, 459 U.S. 460, 466–68, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), abrogated by *Sandin*, 515 U.S. at 483, 115 S.Ct. 2293.

■ Perry alleged that, as a result of the disciplinary proceedings, he was sanctioned to 30 days of solitary confinement, 60 days without visiting privileges, and loss of his institutional employment. These sanctions do not qualify as an "atypical or significant hardship" under *Sandin*. Thirty days of solitary confinement is not atypical. *See Sandin*, 515 U.S. at 486, 115 S.Ct. 2293. In addition, prisoners do not have constitutionally-protected interests in prison visitation or in holding a job. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506

(1989); *Block v. Rutherford,* 468 U.S. 576, 588, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984); *James v. Quinlan,* 866 F.2d 627, 629 (3d Cir.1989). Because the sanctions imposed upon Perry were insufficient to trigger due process protections, Perry cannot state a procedural due process claim against the SCI–Waymart officials based upon his disciplinary proceedings.

### III.

We have reviewed the record in this matter and conclude that there is no substantial question to be presented on appeal. Accordingly, we will summarily affirm the judgment of the District Court. *See* 3d Cir. L.A.R. 27.4; I.O.P. 10.6.