PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 19-1927

———————————

JOHN DOE I; JOHN DOE II,

Appellants

v.

GOVERNOR OF PENNSYLVANIA;
ATTORNEY GENERAL PENNSYLVANIA;
COMMISSIONER PENNSYLVANIA STATE POLICE;
PENNSYLVANIA STATE POLICE

———————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. Civil No. 2-16-cv-06039)
District Judge:  Honorable Joel H. Slomsky

———————————

Argued on December 9, 2019

Before: RESTREPO, ROTH and FISHER, <u>Circuit Judges</u>

(Opinion filed:  October 14, 2020)

James W. Porter, III        (**ARGUED**)
Bradley Arant Boult Cummings
1819 Fifth Avenue North
One Federal Place
Birmingham, AL 35203

Marc A. Nadone
James P. Sweeney
Tara S. Woodward
Bradley Arant Boult Cummings
1615 L Street, N.W.
Suite 1350
Washington, DC 20036

       Counsel for Appellants


Claudia M. Tesoro        (**ARGUED**)
Office of Attorney General of Pennsylvania
1600 Arch Street
Suite 300
Philadelphia, PA 19103

       Counsel for Appellees

Adam J. Kraut
Joshua Prince
Prince Law Offices
646 Lenape Road
Bechtelsville, PA 19505

Counsel for Amicus Appellants
Allegheny County
Sportsmens League; Firearms
Owners Against Crime;
Gun Owners Foundation; Second
Amendment Organization


Peter A. Patterson
David H. Tompson
Cooper & Kirk
1523 New Hampshire Avenue, N.W.
Washington, DC 20036

Counsel for Amicus Appellant
Pennsylvania Federation of
Sportsmen and Conservationists

————————

OPINION

————————

ROTH, Circuit Judge

John Doe I and John Doe II were evaluated on an emergency basis pursuant to Pennsylvania Mental Health

3

Procedures Act (MHPA) Section 302 and were found in need of inpatient treatment. Section 6105(c)(4) of the Pennsylvania Uniform Firearms Act (PUFA) prohibits "[any] person who has been . . . committed to a mental institution for inpatient care and treatment under [MHPA] [S]ection 302" from possessing firearms. The Does challenge PUFA § 6105(c)(4)'s constitutionality on its face. They argue that it deprives those, who are certified committable under MHPA § 302, of their Second Amendment rights without procedural due process. For the reasons below, we hold that the Does have failed to raise a proper challenge to Pennsylvania's statutory scheme. We will therefore affirm the judgment of the District Court.

## I.

A very brief sketch of the facts is necessary to provide context for the Does' claim. Doe I was certified committable in 2011 after he became depressed and his mother took him to an emergency room for an emergency evaluation. Doe II was certified committable in 1996 after police brought him to a hospital upon learning that he had threatened to harm himself. Both Does' commitment certification records were reported to and recorded in the Pennsylvania Instant Check System and the National Instant Criminal Background Check System databases. As a result, they were prohibited from purchasing firearms when they later attempted to do so.

The Does filed this action in the District Court for the Eastern District of Pennsylvania, alleging that PUFA § 6105(c)(4) is facially unconstitutional because it deprives all those, who are committed under MHPA § 302, of their Second Amendment rights without procedural due process. The District Court denied the Does' Motion for Summary

4

Judgment and granted summary judgment to the Pennsylvania defendants. It held that although those committed under MHPA § 302 have a protected liberty interest in the right to bear arms, PUFA § 6105(c)(4) provides sufficient procedural protections before depriving them of their Second Amendment rights. The Does appealed.[1]

## II.

Because the Does mount a facial, rather than an as-applied challenge, we begin with the relevant statutes.

MHPA § 301(a) defines those who may be required to undergo involuntary emergency examination and mental health treatment. It provides that "[w]henever a person is severely mentally disabled and in need of immediate treatment," he "may be made subject to involuntary emergency examination and treatment."[2] This section further provides that a "person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses *a clear and present danger* of harm to others or to himself."[3]

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. We review grants of summary judgment de novo. *Foehl v. United States*, 238 F.3d 474, 477 (3d Cir. 2001).

[2] 50 Pa. C.S. § 7301(a).

[3] *Id.* (emphasis added).

5

"Clear and present danger" is determined in accordance with MHPA § 301(b).  Under that provision, a clear and present danger to others exists if, within the past thirty days, the person being evaluated has "inflicted or attempted to inflict serious bodily harm on another" and is reasonably likely to do so again.[4]  Clear and present danger can also be established if a person is a danger to himself.  Such a danger exists if any of three situations has arisen within the past thirty days:  (1) the person has been unable to care for himself such that, absent adequate treatment, "death, serious bodily injury or serious physical debilitation would ensue within 30 days"; (2) the person "has attempted suicide" and, absent adequate treatment, is reasonably likely to commit suicide; or (3) the person has engaged in substantial actual or attempted self-mutilation and, absent adequate treatment, actual self-mutilation is reasonably probable.[5]

MHPA § 302 authorizes emergency examinations "at a treatment facility upon the certification of a physician stating the need for such examination," upon a warrant issued by the county mental health administrator, or "upon application by a physician or other authorized person who has personally observed conduct showing the need for such examination."[6]  A person taken to a facility for this purpose "must be examined by a physician within two hours of arrival" to determine whether he "is severely mentally disabled . . . and in need of immediate treatment."[7]  Only individuals who are found by an examining physician to be "severely mentally disabled" and to

---

[4] *Id.* § 7301(b)(1).
[5] *Id.* § 7301(b)(2).
[6] *Id.* § 7302(a).
[7] *Id.* § 7302(b).

pose a "clear and present danger of harm" to themselves or others can be involuntarily committed pursuant to MHPA § 302.[8]

Once a person is certified committable under MHPA § 302, section 6105(c)(4) of PUFA automatically prohibits him from owning or possessing firearms. This restriction under Pennsylvania law also applies to deprive individuals of their gun rights under federal law.[9] Pennsylvania does, however, provide three post-deprivation remedies to those who seek recovery of their firearm rights: (1) a determination by a court that an applicant is not a risk to himself or others,[10] (2) a challenge to the accuracy of the mental health record,[11] and (3) an expungement of the commitment record because of insufficient evidence.[12]

## III.

The Does argue that they and all others, who have been prohibited from possessing firearms under PUFA § 6105(c)(4) and MHPA § 302, have been stripped of a protected liberty interest under the Fourteenth Amendment: their Second Amendment right to bear arms. The Second Amendment

---

[8] *Id*. § 7301(b)(a).

[9] 18 Pa. C.S. § 6105(c)(4); 18 U.S.C. § 922(g)(4).

[10] *Id.* § 6105(f)(1). Relief under this statute would also result in restoration of firearm rights under federal law. *See* U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, ATF Form 321012, Certification of Qualifying Relief from Disabilities Program (March 2016).

[11] 18 Pa. C.S. § 6111.1(e).

[12] *Id.* § 6111.1(g)(2).

7

states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."[13] In *District of Columbia v. Heller*, the Supreme Court determined that at the "core" of the Second Amendment is the right of "law-abiding, responsible citizens to use arms in defense of hearth and home."[14] The Court in *Heller* emphasized, however, that there are "presumptively lawful regulatory measures" that can restrict that right, and that the Court was decidedly *not* "cast[ing] doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill."[15]

We have consistently hewed to the exceptions that *Heller* preserved.[16] As we stated in *Beers v. Att'y Gen. United States,*[17] to determine whether a category of people is excluded from the Second Amendment under *Heller*, "we look at the historic, traditional justifications for barring a class of individuals from possessing guns." In *Beers*, we held that the plaintiff lacked a right to bear arms because he was part of "the

---

[13] *Id.* amend. II.

[14] 554 U.S. 570, 635 (2008). And the right applies to the states through the Fourteenth Amendment. *See McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010).

[15] *Heller,* 554 U.S. at 626.

[16] *See, e.g.*, *Binderup v. Attorney General United States of America*, 836 F.3d 336, 347-48 (3d Cir. 2016) (en banc); *United States v. Marzzarella*, 614 F.3d 85, 89-92 (3d Cir. 2010).

[17] 927 F.3d 150, 153 (3d Cir. 2019), *vacated on other grounds*, *Beers v. Barr*, No. 19-864, 2020 WL 2515441 (U.S. May 18, 2020).

8

historically-barred class of mentally ill individuals who were excluded from Second Amendment protection."[18] In configuring the "historically-barred class," we concluded that it consists of "individuals who were considered dangerous to the public or to themselves."[19]

As to *who* is vested with authority to determine that one is a danger to oneself or the public, and on what grounds that person may do so, we now make explicit what was implicit in *Beers*, that we defer to the relevant statute's reasonable standards and designations. The relevant statute in *Beers* was 18 U.S.C. § 922(g)(4), which prohibits firearm possession in instances where one has been determined "a danger to himself or others" "as a result of . . . mental illness."[20] In *Beers* we deferred to § 922(g)(4) and to MHPA §§ 302–04, under which the plaintiff had been involuntarily committed, in concluding that he was a danger to himself or others as a result of mental illness.[21]

In the case at bar, PUFA § 6105(c)(4) and MHPA § 302 are the relevant statutes for determining that an individual is a danger to himself or others as a result of mental illness; it is to these statutes that we defer. We find no reason to second-guess the adequacy of Pennsylvania's requirement under MHPA § 302 that a physician determine that one is a danger to himself or others as a result of mental illness and is "severely mentally disabled . . . and in need of immediate treatment." Thus, once a person has been involuntarily committed under MHPA § 302,

---

[18] *Id*. at 157.

[19] *Id*.

[20] *Id.*

[21] *Id.*

9

that person has joined the class of those historically without Second Amendment rights.

Left without a Second Amendment right, the Does can make only two challenges. They can challenge MHPA § 302 on procedural due process grounds—that is, that MHPA § 302 provides inadequate procedure before involuntarily temporarily committing someone. Or they can challenge PUFA § 6105(c)(4) on substantive Second Amendment grounds—that is, that involuntary temporary commitment does not fall under *Heller*'s mental illness exception and therefore PUFA § 6105(c)(4) is substantively unconstitutional. The Does have made it expressly clear that they are bringing neither challenge.[22] In presenting an appeal, parties must formulate the correct challenge on their own and brief us accordingly. "[W]e will not manufacture arguments [for them]."[23]

## IV.

For the above reasons, we will affirm the order of the District Court, granting defendants' Motion for Summary Judgment.

---

[22] Pet. Br. 17, 20-21.

[23] *Guatay Christian Fellowship v. Cty. of San Diego*, 670 F.3d 957, 987 (9th Cir. 2011) (first alteration "[w]" in original; the change to "[W]" is added here.) (quoting *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994)).

*John Doe I, et al. v. Governor of Pennsylvania, et al.*, No. 19-1927

FISHER, *Circuit Judge*, concurring in the judgment.

The majority affirms the District Court's opinion on the basis that the Does have failed to raise a proper challenge to Pennsylvania's statutory scheme. To come to that conclusion, my colleagues hold that "once a person has been involuntarily committed under MHPA § 302, that person has joined the class of those historically without Second Amendment rights." Maj. Op. III. However, I believe that the issue of whether Section 302 committees retain their Second Amendment right to possess firearms is a close question. Because we do not need to reach this issue in order to decide the case before us, it is, as a matter of judicial restraint, best left for another day. Therefore, I respectfully disagree with the majority's reasoning and concur in the judgment only. I would affirm the District Court on less contentious grounds: that, assuming without deciding that Section 302 committees retain their Second Amendment right to possess firearms—and thus have a protected liberty interest—there is no Fourteenth Amendment violation because the State's post-deprivation procedures provide Section 302 committees adequate due process.

The Does argue that PUFA § 6105(c)(4) is facially unconstitutional because it deprives them, and all other similarly situated individuals, of the right to bear arms without due process of law. They sought a declaration that PUFA § 6105(c)(4) violates Fourteenth Amendment procedural due process as to those whose only disqualifying event is that they were certified committable under MHPA § 302.

We use a two-pronged analysis to evaluate whether a law violates the Fourteenth Amendment's Due Process Clause. The court must ask whether there is a protected life, liberty, or

1

property interest at stake, and if so, whether the procedures afforded amount to "due process of law." *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569-72 (1972)). Therefore, we would normally begin our analysis by evaluating the asserted protected liberty interest. However, the Supreme Court has warned that when confronted with difficult questions, we should "confine ourselves to deciding only what is necessary to the disposition of the immediate case." *Whitehouse v. Ill. Cent. R.R. Co.*, 349 U.S. 366, 373 (1955); *see also Lyng v. Nw. Indian Cemetery Protective Assn.*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."); *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case." (citation omitted)).

Because Pennsylvania's post-deprivation procedures provide Section 302 committees with adequate due process, regardless of whether the Does have a protected liberty interest, we need not decide in this case whether they retain a Second Amendment right to possess firearms.

Assuming, then, that the Does have a protected liberty interest, the question becomes whether the procedures afforded amount to "due process of law." *Robb*, 733 F.2d at 292. The Does first contend that they are entitled to pre-deprivation procedures before being permanently deprived of their Second Amendment rights. However, such procedures are not constitutionally required in every case. "[T]he Supreme Court 'has recognized, on many occasions, that where a State must act quickly, or where it would be impractical to provide

2

predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause.'" *Nat'l Amusements Inc. v. Borough of Palmyra*, 716 F.3d 57, 62 (3d Cir. 2013) (quoting *Gilbert v. Homar*, 520 U.S. 924, 930 (1997)). In *Gilbert*, for example, the Court held that a police officer arrested on drug charges was not entitled to notice and a hearing prior to being suspended without pay because of the state's significant interest in the officer's immediate suspension. 520 U.S. at 932-34.

To determine what procedures the Constitution requires in a particular case, including whether pre-deprivation procedures are required and whether post-deprivation procedures are constitutionally adequate, a court must consider three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As noted, I assume, under the first factor, that a Section 302 committee has a protected liberty interest in the right to bear arms. The other factors, however, weigh in favor of finding that pre-deprivation procedures are not necessary in this case. As to the second factor, risk of erroneous deprivation is low because a Section 302 committee had to have posed a "clear and present danger" to himself or others at the time of

3

his commitment. A physician would have had to examine the individual, and only if the physician makes this determination is the individual committed under Section 302. Furthermore, additional pre-deprivation safeguards have little value here. The District Court aptly observed, for example, that "[n]othing in [PUFA § 6105(c)(4)] suggests that only Section 302 committees on the more dangerous or severe end of the mental health spectrum are subject to the firearms prohibition. Thus, a hearing to determine where a Section 302 committee falls on that spectrum is not relevant to the statutory scheme and has no value." J.A. 38. Finally, the third factor also weighs against the necessity of a pre-deprivation hearing. Pennsylvania has a prevailing interest in public safety and ensuring that potentially dangerous individuals are not permitted to own deadly weapons.

Thus, as two of the three *Mathews* factors weigh against the Does, in my view the District Court correctly concluded that Section 302 committees' due process right does not require pre-deprivation procedures.

The Does next argue that, even if pre-deprivation remedies are not constitutionally required here, the available post-deprivation remedies are constitutionally inadequate. There are three post-deprivation procedures available to an individual who seeks to lift the firearm restriction imposed by PUFA § 6105(c)(4) as a result of a Section 302 commitment. First, an individual can file a petition in the Court of Common Pleas, asserting that he is no longer mentally ill and should be allowed to own a gun. 18 Pa. Cons. Stat. § 6105(f)(1). Both state and federal firearm rights are restored "if the court determines that the applicant may possess a firearm without risk to the applicant or any other person." *Id.* This process allows for a full evidentiary hearing in the Court of Common

4

Pleas at which both parties have the right to present evidence and cross-examine witnesses.

The predominant thrust of the Does' argument was that there is no meaningful due process because PUFA § 6105(f)(1) cannot undo the federal firearms disqualification. However, since July 1, 2019, relief under this provision also results in restoration of firearm rights under federal law. *See* U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, ATF Form 321012, Certification of Qualifying Relief from Disabilities Program (March 2016).

Second, an individual can seek to have his Section 302 commitment expunged by "petition[ing] the court to review the sufficiency of the evidence upon which the commitment was based." 18 Pa. Cons. Stat. § 6111.1(g)(2). Successful expungement under this section results in the restoration of both state and federal firearms rights.

Third, an individual can submit a challenge to the Pennsylvania State Police that contests the accuracy of his or her mental health record. 18 Pa. Cons. Stat. § 6111.1(e). "If the challenge is ruled invalid," the individual has "the right to appeal the decision to the Attorney General" of Pennsylvania, at which point an Administrative Law Judge will hold a hearing de novo. *Id.* § 6111.1(e)(3). The Administrative Law Judge's decision may be appealed to the Pennsylvania Commonwealth Court. *Id.* § 6111.1(e)(4).

Where a state provides adequate post-deprivation remedies, it does not violate the Due Process Clause. *Parratt v. Taylor*, 451 U.S. 527, 538–39 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). PUFA's three post-deprivation remedies are adequate because they satisfy the *Mathews* test.

A Section 302 committee's liberty interest (which is assumed for my purposes here) must be weighed against the

5

state's strong interest in public safety and, hence, in proceeding cautiously before permitting individuals who once "pose[d] a clear and present danger" to reacquire firearms. 50 Pa. Stat. § 7301(a). Given that the risk of erroneous deprivation is low and that the value of additional procedural safeguards is negligible in this case, the balance weighs against the Does. The risk of erroneous deprivation can still be low even if not every questioned deprivation is undone—there may be real reasons for not restoring every Section 302 committee's firearms rights. According to Pennsylvania State Police statistics, forty-one Section 302 committees pursued restoration through one of the three available post-deprivation procedures in 2017. Of that number, seventeen individuals were successful. It is also no longer the case that a successful PUFA § 6105(f) petitioner cannot have his federal rights restored. *See* ATF Form 321012. Thus, there is nothing "permanent" about PUFA § 6105(c)(4), as the Does suggest. Appellants' Br. 40.

As the District Court correctly determined that the three post-deprivation procedures satisfy due process, there is no Fourteenth Amendment violation, and I would affirm on that basis.

For these reasons, I concur in the judgment affirming the District Court.